Appellant was convicted of assault with intent to rape, and his punishment assessed at fifty years in the penitentiary; and prosecutes this appeal.
A summary of the facts shows, on the part of the State, that the prosecutrix, May Pullen, a young white girl about 17 years of age, lived at Houston Heights, a suburb of the City of Houston, and that on the occasion in question, which was about the 2d of March, 1907, late in the evening, she took a car from the city to her home, some two or three miles distant. After alighting from the car, she had several blocks to walk before getting to her home; night had set in, and it was quite dark; when about a block or two short of her home, just as she turned the corner of the street near the cotton mill, some one came up and took hold of her arm; she at first thought it was some friend, but immediately turned and saw that it was not, and began to scream. Appellant grabbed hold of her, and told her not to make a noise, and then began to beat and choke her; knocked her down twice, she in the meantime screaming. Persons ran up and her assailant fled. Prosecutrix identified appellant as the person who had assaulted her, and other witnesses testify to his proximity in that immediate vicinity. Appellant was shown to be a negro resident of the City of Houston, and at the time was an itinerant peddler of drugs for a drug-house in said city; he proved an alibi by a number of witnesses. *Page 544 
Appellant made a motion to quash the indictment, based on alleged race discrimination in the formation of the grand jury, and he also made a motion to quash the petit jury panel summoned to try him on the same ground. The facts elicited on these two motions were substantially the same as proven in the case of Thomas v. State, 16 Texas Ct. Rep., 535, which was also a case from Harris County, and reference is here made to same. The facts briefly stated here, as in that case, show that the colored population of Harris County is from one-fifth to one-fourth of the white population; that there are from 8,000 to 10,000 legal voters in Harris County, from one-fifth to one-fourth of same being negroes; that the proportion, however, of negroes competent for jury service is not the same as the pro rata of white voters, and the number of negroes qualified for jury service is not stated. The jury commissioners appointed by the court were all whites, and they stated that the court instructed them not to discriminate against the negro race, and they endeavored not to do so; that in discharging their duty they endeavored to get the best material for jury service, and they selected one grand juror, and several petit jurors who were negroes for each week of the term, while it is urged by appellant that the attempted pro rating of jury service, and the allowance of only so many negroes on the grand jury and petit jury is evidence of discrimination. As stated in the Thomas case, supra, we do not believe this is true, but looking to the whole record, we think it is evident that the jury commissioners fairly and honestly discharged their duty, and did not in fact discriminate against the negro race in the selection of either the grand or petit jury, and we accordingly hold that the court did not err in overruling said motions. In this connection, we note that it is claimed the court committed an error in refusing to admit testimony offered of proceedings in other courts of Harris County, with reference to the drawing of jurors. We do not believe this testimony was relevant.
Appellant also contends that the proceedings are erroneous and quashable, because in selecting the jury to try the case the mode provided by statute was not pursued; that is, instead of a box, as required by law, a hat was used in which to place the jury tickets for drawing, and that the tickets were not folded when placed in the hat. We take it that while the terms of the statute should be pursued, yet in the absence of some fraud, in the method of drawing, intended to deprive the accused person of some right, and which was calculated to do so, that where the method pointed out by statute is substantially pursued, it will not afford reversible error. There is no suggestion that the clerk, in drawing the tickets from the hat, looked into same to see how he should draw them, or that the method pursued injuriously affected any of appellant's rights. The court did not err in refusing to sustain appellant's motion.
Appellant assigns as error the action of the court in overruling his motion for continuance, and in refusing to grant him a new trial, based *Page 545 
on the previous action of the court in overruling said motion. Appellant asked a continuance of the case on account of the absence of a number of witnesses, to wit: Cicero Greer, Lavenia Tone, Fannie Greer, Rosaia Williams, R. Bell, Robert Harris, and Lewis Finley. It may be said, as to all of these witnesses, that the diligence shown was not sufficient, and, moreover, it may be stated, that the application fails to show their materiality. For instance, as to the witness Cicero Greer, it is said that appellant expects to prove by him that he called at the house where the prosecutrix lived sometime after the transaction, and overheard a conversation between prosecutrix' father and mother, at which the prosecutrix was present, in regard to the assault made on the prosecutrix, and that it was stated in her presence that the man who assaulted her had on black clothes and a derby hat, and that she would not know the man if she would see him, and prosecutrix assented to same, and made no denial or correction. This is too vague, and too general. It does not show that she said a word, and if said witness was present, his testimony would not be admissible under this statement. By several of said witnesses it was proposed to be shown that appellant was in the habit of wearing, on week days, a gray or drab colored suit, and did not wear a derby hat. This may have been appellant's habit; indeed, it was so proven by a number of witnesses on his behalf. The State does not appear to have contested his habit of wearing a drab suit on week days, or that he wore a soft felt hat, and we fail to see how appellant could have been injured because he was deprived of cumulative testimony upon an issue that was not controverted. Nor do we think it was material for appellant to prove by one witness that he frequently left his grip or medicine case over night at the house of I.C. Smith, after he would return from his work in the evening. We do not understand any particular stress was laid on the fact that appellant's grip was found at said place by the officers. Furthermore, it occurs to us that the testimony of Lewis Finley was of no consequence. The State did not controvert the fact that appellant may have been ill at Finley's house at the time he was arrested. The State merely proved the fact that they made search for appellant between the commission of the alleged offense on Saturday night and Monday when he was arrested, and failed to find him until Monday.
We note that appellant alleges that he expects to prove by one of the absent witnesses that between 6 and 9 o'clock of the night when the offense is charged to have been committed that "the defendant was on his way to the City of Houston from Houston Heights, and that about the time it is claimed the offense was committed, or very shortly thereafter, the defendant was in the City of Houston, and far away from the place where the alleged offense was committed, and so far away from said place that he could not have been present at the commission of said offense and reached the City of Houston by the time he was seen in the main part of the City of Houston." This statement is too general, and we take it that perjury could not be assigned upon it. It is not stated *Page 546 
that the witness was present with appellant at any particular place between the hours alleged. We do not believe the court erred in overruling the motion for continuance, or in refusing a new trial based on this ground.
Appellant complains that the court refused to give his special requested instruction, as follows: "You are instructed that there is no evidence in this case showing any intent to commit the offense of an assault with intent to commit rape and cannot convict him of that offense as charged in the indictment." Appellant further criticises the charge of the court in not submitting to the jury if appellant had some other intent than to rape, as an intent to rob, which he claims is equally supported by the testimony, that they should acquit him. By referring to the charge of the court, it will be seen that the jury were directly instructed that before they could convict appellant of an assault with intent to rape, they must believe that he entertained at the time the specific intent to consummate the rape, and he further instructed the jury, in this connection, that if they did not believe that appellant entertained the specific intent to commit rape on the prosecutrix, then to try the case on the question of an aggravated assault, and if they believed he was a male person over 21 years old, and assaulted prosecutrix, a female, find him guilty of an aggravated assault. It occurs to us, under the circumstances of this case, that in the charges given by the court, all the rights of appellant were sufficiently safeguarded. In the first place they were bound to believe beyond a reasonable doubt that he entertained the specific intent to rape prosecutrix before they could convict him; if they doubted that he entertained this intent, of course, they would acquit him. Appellant further contends that the proof of the specific intent to rape is not sufficiently made out by the State; that under the circumstances the proof equally tends to show that appellant may have entertained the intent to rob. We do not agree with this contention. The evidence shows that appellant seized hold of the prosecutrix; made no demand of her to surrender her property; he knew she was a woman, and there is no testimony tending to show that he had any reason to believe she had valuables; she attempted to scream, and he merely told her to hush, and then persisted in choking her down, evidently to make her hush; if he had wanted to take her valuables, he had ample opportunity to do so. If appellant had any other purpose than to have carnal intercourse with prosecutrix, there is no manifestation of it in this record, and the circumstances furnished him ample opportunity to have taken her pocket-book, which was in her hand at the time of the assault, or to have taken her breast-pin from her neck, if he had so desired. His setting upon a young girl in the night time, under the circumstances, and his violence, and when she attempted to scream, telling her to hush, would strongly indicate his intent. In our opinion the facts are amply sufficient to show his purpose, and but for the fact of her screams, and of assistance rushing *Page 547 
to her rescue, he would, no doubt, have accomplished his design. The authorities cited by appellant, we do not think are in point.
There being no errors in the record, the judgment is affirmed.
Affirmed.
 ON MOTION FOR REHEARING. June 27, 1907.