## J. C. OXLEY v. S. R. ALLEN.

### Decided February 5, 1908.

**1.—Local Option Election—Contest—Pleading.**

In a contest of a local option election, contestant alleged generally that the election was invalid because the polls at one of the voting boxes were closed at six instead of seven o'clock, whereby a large number of voters, whose vote would have changed .the result, were prevented from voting; and that the oath administered to the officers of the election was illegal and not binding. - Held, that an exception to the petition was properly sustained. The facts relied on by a contestant of an election should be set forth specifically . and definitely. Said pleading was defective in not alleging that the result of the election would have been materially changed, and in not setting out the oath which was in fact administered to the officers of the election.

**2.—Same—Justice Precinct—Diminishing Territory.**

To abolish local option in a justice's precinct requires a majority vote of the inhabitants of the same territory which adopted it. While local option was in force in a justice's precinct the Commissioners Court of the county reduced the territory of the precinct, and thereafter ordered a local option election in the precinct as reduced. Held, that the election was void.

**3.—Same—Second Election within Two Years.**

After the adoption of local option in a given territory, a second election upon the same question cannot be held in the same territory within two years after the first election.

**4.—Same—Collateral Attack.**

When a local option election is void because ordered and held in a territory of less area than that which adopted it, the same may be attacked and declared void in a collateral proceeding. A formal contest and judgment to that effect is not necessary.

**5.—Same—Declaring Result—Limitation.**

The fact that more than one year had elapsed since the holding of a local option election and that the ballots and election returns had been destroyed, will not deprive the Commissioners Court of the county in which the election was held, from declaring the result.

Appeal from the District Court of Hamilton County. Tried below before Hon. N. R. Lindsey.

*R. Q. Murphree* and *Langford & Chesley,* for appellant.—The allegation that by violating the law the officers of an election had deprived a large number of voters, who would have voted against local option, of the privilege of casting their votes and thereby the result of said election would have been changed and would have been rendered doubtful, is sufficient and contestant is not required to give the name of each and every voter who was so deprived of the privilege of voting, as the names and number of voters is a matter of proof and not of pleading. Wells v. Fairbanks, 5 Texas, 584-5; Galveston Ry. Co. v. Crossbell, 25 S. W., 486; Gulf, C. & S. F. Ry. v. Smith, 26 S. W., 644-5; Houston & T. C. Ry. Co. v. Shaffer, 54 Texas, 646.

Under the Act of the 30th Legislature, page 447, in the contest of a local option case the trial court has authority to inquire into and pass upon the sufficiency of the evidence upon which the result of an election is declared.

An election can not be held in the territory where a prior local option election has been held within two years of the date of said election. Rev. Stats., art. 3393; Burks v. State, 103 S. W., 850.

The court erred in the second paragraph of his conclusion of law in holding that the local option election in precinct No. 3, Hamilton County, Texas, was void, since there is no evidence that said election has been contested and held invalid, and until this is done the election was valid. Ex parte Pollard, 103 S. W., 878; Burks v. State, 103 S. W., 850.

*S. R. Allen* and *A. R. Eidson,* for appellee.—In the absence of an allegation that the local option election in question did not result as ascertained and declared by the Commissioners Court, it is immaterial as to what evidence the court acted on in declaring the result of said election. Article 3397, Rev. Civ. Stat., as amended by the 30th Legislature, page 447; ex parte John Burg, 32 Texas Crim. Rep., 459; ex parte Walton, 74 S. W., 314; Rawls v. State, 89 S. W., 1071.

The local option election held in precinct No. 3 of Hamilton County, on May 10, 1902, was a legal and valid election. Ex parte Pollard, 103 S. W., 879; Medford v. State, 74 S. W., 768; Woods v. State, 75 S. W., 37; Nelson v. State, 75 S. W., 502; ex parte Fields, 86 S. W., 1022.

The election ordered the 15th day of February and held on the 15th day of March, 1902, was void, because the Commissioners Court had no authority under the law to order this election, it not being ordered to be held in the territory which adopted local option and in which local option was in force at the time. Article 3393, Sayles' Civil Statute; ex parte Pollard, 103 S. W., 879; ex parte Fields, 86 S. W., 1023; ex parte Elliott, 72 S. W., 837; ex parte Heyman, 78 S. W., 349; ex parte Connelly, 75 S. W., 301; King v. State, 33 Texas Crim. Rep., 547; Curry v. State, 28 Texas Crim. App., 475; Burkes v. State, 103 S. W., 850; Norman v. Thompson, 72 S. W., 62.

The fact that the Commissioners Court did not declare the result of the local option election held March 10, 1906, until July 22, 1907, did not invalidate said election, but only postponed the taking effect of the local option law. Ex parte Bird, 32 Texas Crim. Rep., 459; Barham v. State, 53 S. W., 109; ex parte Walton, 74 S. W., 314; Rawls v. State, 89 S. W., 1071.

There is no authority in article 3397 as amended by the 30th Legislature for a court in a contest to hold an election void or invalid on account of irregularities occurring after the election. Art. 3397, Acts 30th Legislature, 447; Norman v. Thompson, 72 S. W., 62; ex parte Burg, 32 Texas Crim. Rep., 549.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellant against S. R. Allen, county attorney of Hamilton County, for the purpose of contesting the validity of a local option election held in justice precinct No. 3 in said county, on the 10th day of March, 1906. It appears from the conclusions of fact as found by the court, as well as the facts in evidence, that in 1894 a local option election was duly had and held for justice precinct No. 3, of Hamilton County, at which election local option prevailed, and the same was duly carried into effect by the county authorities.

Thereafter in 1896, and likewise in 1899, local option elections were properly ordered, had and held for said justice precinct, each of which elections resulted in favor of local option, and the same was thereby continued in force in said precinct.

The County Commissioners Court of Hamilton County, at its February term, 1900, diminished the area of said justice precinct to the extent of taking therefrom a strip of territory one mile wide by three miles long, which said strip of land so taken from justice precinct No. 3 was inhabited by qualified voters at the dates of all the elections held in said justice's precinct, both before and subsequent to said change therein as made by said Commissioners Court. Thereafter, at its February term, 1902, the Commissioners Court of Hamilton County ordered a local option election to be held in justice precinct No. 3 of said county on March 15, 1902, which said election

was ordered for and held in justice precinct No. 3 as it then existed after the change aforesaid, and not in the territory originally embraced in justice precinct No. 3. The result of said election was never declared and never regarded by the Commissioners Court as regular, on the ground that it was ordered for and actually held in a different territory from that which had previously adopted local option.

Thereafter, in April, 1902, the Commissioners Court of Hamilton County ordered another election to be held on the 10th day of May, 1902, in the territory comprising justice precinct No. 3 as the same existed prior to the change therein, describing said territory in its order by metes and bounds, and being identically the same territory that originally adopted it, and which had continued it in force by the elections of 1896 and 1899, and which last election, held on May 10, 1902, resulted in the defeat of local option.

On the 17th day of February, 1906, the Commissioners Court of Hamilton County ordered another local option election to be held within and for said precinct No. 3 on the 10th day of March, 1906, and the election was ordered for the territory comprising precinct No. 3 as the same stood after the change diminishing same, as aforesaid, which election resulted in favor of local option in said precinct No. 3 as then constituted. Said Commissioners Court met on the 22d day of March next thereafter, being the eleventh day after said election, canvassed the returns of same and ascertained the fact that said election resulted in favor of local option, but said court failed to enter its order declaring the result of said election, but at said time ordered another local option election to be held on the 14th of April, 1906, in justice precinct No. 3 as the same then existed, which last election was held in accordance with the order of said court, and the result, to wit, that of prohibition, duly declared, and an order to that effect was duly published, and prosecutions were instituted thereunder for the selling of liquor in violation of a local option law in said precinct as put in force by said election of April, 1906, which last election the Court of Criminal Appeals held void, on the ground that the Commissioners Court of Hamilton County had no authority to order said election. (Burkes v. State, 103 S. W., 850.)

Thereafter the Commissioners Court of Hamilton County, on the 27th day of July, 1907, in obedience to a writ of mandamus, met in special session, and declared the result · of the local option election which had been held in precinct No. 3 on March 10, 1906, and which election resulted in favor of local option, and made the necessary orders to put the same into effect.

Besides some questions relating to the pleadings, the principal contention as made by appellant against the validity of the local option election of March 10, 1906, seems to be, in effect, that by reason of the elections of 1894, 1896 and 1899, local option prevailed in precinct No. 3 as originally constituted, and that in February, 1900, the Commissioners Court having changed the boundaries and diminished the area of said precinct, and the next election in said precinct, which was held March 15, 1902, was in precinct No. 3

as changed by the Commissioners Court in 1900, and not in said precinct as it existed when local option was voted in 1894 and reaffirmed in 1896 and 1899; that the Commissioners Court wrongfully held that said last election was invalid, and had no power to order the second election in 1902, because, he contended, that said first election of 1902 was valid until annulled by a proper contest thereof in a court of competent jurisdiction; and that because the election of May 10, 1902, was held within less than two years thereafter, the same was nugatory and without warrant of law, and as a result thereof local option was continued in force as originally voted in 1894, 1896 and 1899, and that as the election of March 10, 1906, was held in the territory of precinct No. 3 as constituted after the change of said precinct in 1900, and not in the territory originally adopting local option, the court should have held the same invalid. Appellant also contended that the Commissioners Court at its July term, 1907, was then without power or authority to declare the result of the election of March 10, 1906, because more than one year had elapsed since the holding of said election, the ballots and returns thereof having in the meantime been destroyed by the county clerk, as required by law.

Appellant by his first assignment of error insists that the court erred in sustaining exceptions to his amended original petition, which in effect alleged that said election was illegal because the polls at one of the voting boxes were closed at six o'clock, and not kept open for the time required by law, to wit, until seven o'clock p. m., and thereby a large number of voters were deprived of the privilege of voting, which would have changed the result and have rendered the same doubtful. Appellant likewise urged in his second assignment that the court erred in striking out paragraph (d) of his first amended original petition, which was to the effect that the oath administered to the officers of the election was illegal and not binding.

These assignments relate to such irregularities as may be discussed together. We do not think that the court erred in sustaining the exceptions above alluded to, because as to the first the number and names of the persons who it is claimed were deprived of voting at said election were not alleged, nor was any excuse offered for failing to so state them; nor is it alleged that the result would have been materially changed by reason thereof, but only that it would have changed the result. This might have been true without really affecting the. legal result of the election. We think it was necessary on the part of the pleader to either give the number and the names of the parties who were thus deprived of the privilege of voting, in order that the contestee might be able to meet this issue with proof, or to have alleged some sufficient excuse for failing so to do, which was not done. A general statement, as contained in the petition, in our judgment is not sufficient.

Nor did the court err in sustaining the exception relative to the point raised in the second assignment of error, that the oath administered was not the proper one. It devolved upon the contestant to allege specifically the oath in fact taken, and to show that the same was different from the one required by law, and his failure

to do so was sufficient ground for sustaining the exception. The facts relied upon by a contestant to impeach the validity of an election should be set forth specifically and definitely, as shown by the following authorities: Maloney v. Collier, 83 S. W., 667; McCreary on Elections, sec. 437; Edwards v. Logan, 69 S. W., 800; Bigham v. Chubb, 95 S. W., 674.

We do not think the court erred in refusing to consider the evidence of A. E. Scott, as alleged by appellant in his third assignment of error, because we believe that said testimony was immaterial with reference to the issue then before the court. Said evidence of Scott, according to the recitals of the bill, related to what occurred in the Commissioners Court relative to the canvass of the returns of the election of March, 1902, which said election we hold to have been clearly illegal, and without authority of law; and, therefore, it would have been immaterial to have considered said testimony.

Appellant by his fourth assignment of error contends that the court erred in the fourth paragraph of its conclusions of fact in holding that the local option election held in precinct No. 3, of Hamilton County, on May 10, 1902, was a valid election, since the undisputed evidence shows that there had been a prior local option election held in said precinct No. 3 within less than two years of the date of said election of May 10, 1902. The fourth conclusion of fact complained of is as follows: "I find that the Commissioners Court, on the —— day of April, 1902, duly and legally passed and entered its order ordering an election to be held in justice precinct No. 3, in said Hamilton County, as said precinct existed when local option was first adopted in said precinct, to wit, in 1894, and as it existed December 9, 1899, when the last local option election was held in said territory to determine whether the sale of intoxicating liquors should be prohibited in said territory; that said territory constituting justice precinct No. 3, as it existed in 1894, and up to the time it was changed in 1900, was set out and particularly described, in the order of the court ordering said election, by metes and bounds, and I find that said election was duly and legally held within and for said territory comprising justice precinct No. 3 at the time local option was originally adopted in said precinct, on the 10th day of May, 1902, and that said election resulted against prohibition, a majority of the votes cast at said election being cast against prohibition. And that said election resulted in the repeal of local option in the territory which adopted it in 1894, and continued it in force up to and including the election of December 9, 1899."

We do not think that the court erred in its holding. It appears from the statement of facts, which support the conclusions of fact as found by the court in this case, that the first election held after the change made in the justice precinct No. 3, was the election of March, 1902. This election was not recognized nor considered of any validity by the Commissioners Court, because it appears that the same was ordered held in justice precinct No. 3 as the same was changed. Under repeated decisions of the Court of Criminal Appeals of this State construing the local option statutes and the Constitution of the State relating thereto, it has been held that,

notwithstanding the fact that the Commissioners Court has the clear legal right after a local option election has been held in a justice precinct, to detach a part of said justice precinct, and add the same to some other justice precinct within the county; but in so doing said Commissioners Court does not and can not under the law in any way interfere with local option as adopted, and its action does not invalidate the local option election formerly held in said territory; but that it requires a vote of the people living within the original bounds of the justice's precinct which put local option into effect, to nullify the same. Therefore, local option having been effective in justice precinct No. 3 from 1894 until 1899, the Commissioners Court by the change in 1900, diminishing said precinct, could not in any way interfere with prohibition as it then existed in the territory formerly known as justice precinct No. 3. So that the election of March 15, 1902, which was held for justice precinct No. 3 as the same existed after the change by the Commissioners Court, was without authority of law, consequently void and could not in any way affect the status of the local option territory as it originally stood; and the election of May, 1902, which took place under an order describing the old territory of justice precinct No. 3 by metes and bounds, as it originally existed, and in which said territory the election of May, 1902, was held, was a legal election and resulted in the defeat of local option in said territory. This being true, it follows that the election of March 10, 1906, which was the next succeeding election thereafter, was the first legal election that was ordered in justice precinct No. 3 after the same had been changed by the order of the Commissioners Court; and if this election resulted in favor of prohibition, then prohibition still exists in said territory, because the election of May, 1906, was illegal in that it was ordered within less than two years thereafter, and for this reason it was so held by the Court of Criminal Appeals in Burkes v. State, *supra.* Ex parte Pollard, 103 S. W., 879; Medford v. State, 74 S. W., 768; Woods v. State, 75 S. W., 37; Nelson v. State, 75 S. W., 502; ex parte Fields, 86 S. W., 1022.

Appellant's fifth and sixth assignments of error in effect raise the same question, and urge that the court erred in the second paragraph of its conclusions of law in holding that the local option election in precinct No. 3, Hamilton County, was void, since there is no evidence that said election has been contested and held invalid by a court of competent jurisdiction, and until this is done the election was valid. The second conclusion of law is that the first election in 1902, the election ordered the 15th day of February, 1902, and held on the 15th day of March, 1902, was void for the reason that the Commissioners Court had no authority under the law to order this election, because it was not ordered to be held in the territory which originally adopted local option, and in which local option was in force under and by virtue of the election held in 1894 and reaffirmed by the elections of 1896 and 1899. The appellant's contention, in effect, is that the election of March, 1902, must be held valid until the same has been duly contested by competent authority. We do not concur with him in this contention, and believe that the

trial court was correct in holding said election void, because the same was not ordered for the territory originally adopting local option, and, under the circumstances, said election was void *ab initio,* and did not require the determination of the same by any contest, as has been frequently held by the courts. We think that this could be determined in a collateral proceeding, as was done. (Ex parte Pollard, *supra.*)

Appellant by his seventh assignment of error insists that the court erred in the fifth paragraph of its conclusions of law in holding that the Commissioners Court of Hamilton County legally declared on July 22, 1907, the result of the local option election held in precinct No. 3, in Hamilton County, on March 10, 1906, more than one year having elapsed between the date of said election and the declaration of the result thereof. Appellant contends that article 1748 of the Revised Civil Statutes on the subject of general elections, providing that all ballots and election returns shall be held by the county clerk for the period of one year and then destroyed if no election contest has been instituted, was intended by the Legislature as a statute of repose, and that the result of an election which has been suffered to lie dormant for a period of more than one year can not be declared. We do not agree with appellant in this contention. The statute referred to does not undertake to prevent or prohibit the Commissioners Court from declaring the result at any time subsequent to the election. It only provides for the burning of the ballots and returns after a period of one year has elapsed in general elections. And while not holding that this statute makes it the duty of the clerk to burn the *ballots and returns of local option elections,* if it can be so construed we do not think that it was the intention of the Legislature, by the enactment thereof, to prevent a court from declaring the result of an election that had been legally held, where there had been a mere failure to do so on the part of the court until after the lapse of one year from the date thereof. We are supported in this view by a number of opinions of the Court of Criminal Appeals of this State construing art. 3390 of the Revised Civil Statutes, requiring the Commissioners Court to declare the result on the 11th day after the local option election, or as soon thereafter as practicable. We know of no statute of limitations upon this subject, and our attention has been called to none by counsel in their brief.

In ex parte Burge, 24 S. W., 289, a similar question, in principle, was passed upon by the Court of Criminal Appeals, and Justice Simpkins, delivering the opinion of the court, in a case where the Commissioners Court had failed to declare the result of an election at the proper time, to wit, on the eleventh day after the election, and had neglected to do so for nearly eight months thereafter, said:

"In determining what circumstances of official omission or misconduct will avoid an election, the object to be attained by an election must be kept in view, to wit, the ascertaining the will of the majority, and whatever statutory provisions are essential to the attainment of this end are obviously indispensable. In special elec-

tions there is a distinction to be drawn between those matters required to be done anterior to the election and those subsequent thereto. The first are generally directed to securing a prompt, fair and intelligent expression of the popular will; while the second are for the purpose of ascertaining and declaring it. In regard to the first, the courts require a strict compliance with the provisions of the statute, not only that the people may be promptly given an opportunity of expressing their will (ex parte Sublett, 23 Texas App., 311), but that full notice of the object, time and place may be certainly given. (McCreary, Elect., secs. 127, 128.) After an election has been held and the will of the people fairly ascertained courts will give such a construction as will best secure and carry out that will, and will not hold the precise time to be the essence of the election, and thereby permit the election to be defeated by the neglect or wilful disregard of a plain ministerial duty. (Id., sec. 128.) We regard the requirement of the statute that 'the order declaring the result and prohibiting the sale of intoxicating liquors should be entered on the eleventh day or as soon thereafter as practicable,' as intended for the benefit of the voters adopting the law; and, while the law requires the order to be entered as soon as practicable, it by no means intends the election to be void on a failure so to do. On the contrary, we think a writ of mandamus would lie to enforce the performance of the duty where it was neglected, and certainly the court can do voluntarily what it can be made to do." The same doctrine has been announced in Barham v. State, 53 S. W., 109; ex parte Waltham, 74 S. W., 314; Rawls v. State, 89 S. W., 1071.

From what has been said we believe that the Commissioners Court had the right to declare the result of the election of March, 1906, at the time it undertook to do so, and was not in any way prevented from so doing by reason of the fact that the law required the ballots cast at said election to be burned before said time. From the findings of fact, supported by the statement of facts, it appears that the result of said election was in fact ascertained and determined at the proper time by the Commissioners Court. They only failed to make the order declaring the result as ascertained by them, at the proper time.

We have been greatly aided in the consideration of the questions here involved by able briefs of counsel for both sides; and, after a full consideration of all the questions urged by appellant, we are inclined to think that no reversible error has been shown in the action of the trial court, and therefore affirm the judgment.

*Affirmed.*