## CLARK v. STUBBS.

No. 8931.

Court of Civil Appeals of Texas. Austin.
July 19, 1939.

V. B. Goar, of Johnson City, and Polk Shelton and Everett L. Looney, both of Austin, for appellant.

Fuchs & Fuchs, of New Braunfels, and Ocie Speer, of Austin, for appellee.

BLAIR, Justice.

This is an election contest. At the general election held on November 8, 1938, appellant, James H. Clark, and appellee, Ben Jack Stubbs, were candidates for the office of County Judge of Blanco County. The Commissioners Court canvassed the returns and found that appellant had received 753 votes and that appellee had received 752 votes; and accordingly declared that appellant was the duly elected County Judge and issued a certificate of election to him. Appellee then filed this contest of the election, alleging that several voters named who had voted for appellant were illegal voters. Appellant replied that several voters who had voted for appellee were illegal voters. A trial to the court without a jury resulted in a finding that there were 16 illegal votes cast for appellee and 21 illegal votes cast for appellant, and that one absentee vote should be added to the total vote of appellant; and after deducting the illegal votes from the total of the respective candidates, the tabulation showed that appellee had received 736 votes and appellant received

733 votes; and appellee was accordingly declared to be the duly elected County Judge of Blanco County.

The appeal resolves itself into a determination of whether the votes challenged by the respective parties were illegal votes. In most instances, the question presented was one of fact as to the status of the voter, and the trial judge's findings thereon are binding upon this court. Several of the challenges involve questions of law which we will discuss.

There are 7 votes which we regard as being legal, but which the trial judge held to be illegal. These votes were those of Mr. and Mrs. R. W. Klett, Mr. and Mrs. C. F. Redford, Mr. and Mrs. W. J. Crider, and B. F. Crider. The first 4 voted for appellant and the last 3 for appellee. These votes were challenged upon the ground that the voters were not residents of Blanco County at the time of the general election, held on November 8, 1938.

■ As to R. W. Klett and his wife, the evidence shows that they had paid their poll taxes in Blanco County, and that Mr. Klett was a State Highway patrolman, stationed at Corpus Christi, Texas, where he had been stationed for about 3 years. He owned a tract of land in Blanco County, where he had a few cattle and a little flock of sheep. He had always claimed Blanco County as his home and had paid his poll taxes there. He was employed by the State Highway Patrol, which has its headquarters in Austin, and was subject to assignment to any portion of the State of Texas.

■ As to Mr. and Mrs. C. F. Redford, the facts show that Mr. Redford, the husband, was employed in the Texas Unemployment Compensation Commission at Austin, Texas, as an auditor, and was sent about over the state wherever necessary to perform his duties. The testimony showed that "he moved around until it is hard to say where he was on a certain date," and that it was thought that he was in Austin on November 8, 1938, working for the same department. These voters paid their poll taxes in Blanco County, as required by law, and were not shown to have ever obtained a residence anywhere else, except that Mr. Redford was employed by a state department at Austin, which sent him out over the state as its auditor.

■ As to Mr. and Mrs. J. W. Crider, the evidence shows that J. W. Crider, the husband, was employed by the United States Bureau of Reclamation, and had been so employed since November 18, 1937. He was born in Blanco County, paid his and his wife's poll taxes there, and voted in Blanco County for 15 years, and claimed Blanco County as their home and residence. He owned an undivided interest in 1,000 acres of land in Blanco County. He had no permanent home in any other county. These voters returned to their home in Blanco County occasionally and slept there once or twice a month in the house on the ranch; and were out of the county only for the purpose of the husband's working for the United States Government in its Reclamation Department.

■ As to B. F. Crider,—he was a single man, who was born and reared in Blanco County, and had paid his poll tax and voted there and claimed it as his home, and on the date of the election was temporarily employed with the NYA. He had no home outside of Blanco County. He and his brother W. J. Crider were born and reared in Johnson City and claimed it as their home. He owned an interest in the 1,000 acres in Blanco County. He did not own any property outside of Blanco County. His work for the NYA called him to Austin, and out of there he worked in some six different counties.

Sec. 9 of Art. 16 of the Texas Constitution, Vernon's Ann.St., provides that: "Absence on business of the State, or of the United States, shall not forfeit a residence once obtained, so as to deprive any one of the right of suffrage, or of being elected or appointed to any office under the exceptions contained in this Constitution."

The seven above named voters were legal voters in Blanco County. The husbands and the single man left their homes in order that they might perform the duties required of them as state or federal government employees. Those employed by the state were working for departments located at Austin, and were sent out over the state wherever their services were necessary. Those employed by the federal government were sent from place to place in the state as the federal government required. These are the sort of voters which the constitution describes. Their employment was such that they might be sent from county to county.

■ Art. 2958, R.S.1925, provides that any person "who is employed as a clerk in one of the departments of the government at the capitol of this State," shall be

entitled to vote in the county in which he lived at the time of his employment, according to his desire and intention. The language, that any person "who is employed as a clerk in one of the departments of the government at the capitol of this State," shall be entitled to maintain his residence at the place he lived when employed, does not limit the provisions of the constitution, which prohibit forfeiture of residence once obtained because of absence on business for the state or federal governments, to only clerks in the capitol at Austin. If it did the statute would be unconstitutional. Under our present system of government, all state employees are employed under one department or the other at the capitol, and may be sent to various counties in the state in which to perform the particular duties required of them. In such situation they may be regarded as being employed by the department of the government at the capitol, and is all the more reason why they should be permitted to maintain their legal residence in the county from which they came. To hold otherwise would be to deprive hundreds of voters who are employed by the state or federal government of an opportunity to vote at any election. It is a matter of common knowledge that hundreds of employees in the state government maintain their residence in the county from which they came, and vote there.

 Appellee challenged the votes of Nell Rose Morrisey, Jess Dyer, Lillie Gibson, Wilbur Herwig, Louise Widerbrush, Mrs. Bowman Baziel, Clinton Jacobs, and Willis Blackburn, because each of them became 21 years of age after January, 1938, and prior to November 8, 1938, and under the governing statute, therefore, they were not entitled to vote without an exemption certificate. Art. 2968a, Vernon's Ann.Civ. St., Acts of 1935, 44th Leg. p. 686, Chap. 292, Sec. 1, provides that each of the voters in question was required to obtain an exemption certificate before he or she would be entitled to vote. Neither of them obtained such a certificate. The statute is mandatory and these voters were not qualified to vote at the election, and the trial court correctly excluded all of such votes. Appellant contends, however, that since the caption to Art. 2968a did not specifically define the voters to whom the exemption clause related or referred, that it was unconstitutional. This is an election contest. It is not a civil suit, and the constitutionality of the statute cannot be attacked in this sort of proceeding. This court held

in Trimmier v. Carlton, 264 S.W. 253, 255, that "jurisdiction in election contests is limited to such matters as tend to show that the election 'was not properly ordered or fairly conducted, such as the failure to give notice of the time and place where the election is to be held or that illegal votes were cast thereat, or some other matter that would impeach the fairness of the result.' Bassel v. Shanklin (Tex.Civ.App.), 183 S.W. 105; McCall v. Lewis [Tex.Civ. App.], 263 S.W. 325."

 However, the caption to the amendatory act or acts amending Art. 2968 does point out that same relates to exemptions without cost to certain qualified voters not subject to payment of poll tax. Exemption was the subject dealt with, and the caption did not have to detail all who were exempt, but such matter was properly left to the act itself, which fully describes all who must obtain exemption certificates before they are entitled to vote.

 We also hold that since appellant challenged several minors who voted for appellee without obtaining an exemption certificate, he is in no position to insist on the legality of those voters who voted for him. Manifestly, he could not claim that the minors who voted for him were not required to have exemption certificates, and on the other hand contend that the minors who voted for appellee were required to have exemption certificates. The trial court correctly excluded all votes of minors who did not have the exemption certificates required by the statute.

 The next group of voters challenged by appellant are Herman Young, Julia Mae Stubbs and Nolan Lathan, all of whom voted absentee votes on Sunday before the election on Tuesday. Appellant attacks these votes as being in violation of the spirit of the statutes which prohibit the doing of certain acts on Sunday. Art. 286, Texas Penal Code; Art. 1974, R.S.1925. These statutes do not relate to voting, and since the election law authorizes the absentee voting for a period of from 20 to 3 days before the election, Sunday would necessarily be included where the election is held on the first Tuesday in November as required by law; and we find no statute prohibiting the voting of absentee votes on Sunday.

 The trial court did not err in sustaining the challenge to the vote of Louis Kramer, upon the ground that he was not

a resident of Blanco County on the date of the election. The evidence shows that Louis Kramer was a minister, and that he preached in Blanco County at Little Blanco until April, 1938, when he resigned and moved to DeWitt County, and there became a minister in that county. He was a married man and his wife went with him to the new church, and there was no evidence that this voter intended to ever return to Blanco County, where he had resigned his position as a minister.

The challenge to the vote of Jim Greenshaw was properly sustained. Jim Greenshaw was ill on the day of the election and a ballot was carried to him beyond the confines of the polling place by the election officials on the day of the election. He made no attempt to comply with the absentee voting law, but the election officials took a ballot to him, which was outside the voting place prescribed for holding the election in his precinct. The time and place for holding elections are usually regarded as mandatory and the time when a voter may cast his ballot is likewise mandatory. While no improper conduct is charged against the officials who took the ballot to the voter, such practice must be condemned because under such practice election officials could take ballots to voters whom they chose, and to voters who were favorable to certain candidates, to the exclusion of others. The statute provides a mode by which a voter who is ill may vote absentee, and that is the exclusive method, except where he presents himself at the voting place prescribed.

The trial court erred in not sustaining the challenge to the vote of Mrs. H. R. Schaeferkoeter. The election officials took a ballot to her 1½ miles away from the polling place on the date of the election, which was far outside of the 100 feet prescribed for the polling place, and in which the ballotting booth and other equipment for voting are required to be kept. Two of the election officials went 1½ miles, or "maybe a little better", where she prepared her ballot, and it was counted for appellant. The trial judge should have sustained this challenge for the reasons stated with regard to the last above voter discussed. Gray v. Ingleside Independent School Dist., Tex.Civ.App., 220 S.W. 350; Sartwell v. Dunn, Tex.Civ. App., 120 S.W.2d 130, 131.

The trial court correctly sustained the challenge to the vote of W. D. Glasscock, because he was a resident of Bexar County on the date of the election. The evidence fully sustains the trial judge's finding in this respect. This voter owned a ranch in Blanco County, where he went occasionally, but he lived in San Antonio, where he carried on his principal business, and where his wife resided and paid her poll tax and voted. He refused to make affidavit that he was a resident of Blanco County when he presented himself at the polls; the election officer therefore correctly refused his vote.

The court did not err in sustaining the challenge to the vote of Lyman Maddox upon the ground that he had changed his residence from Blanco County and lived in Travis County prior to the date he voted on November 8, 1938. This voter was a single man. His parents both lived in Blanco County, where he was born and reared, and where he maintained his home with them. Because of being unable to obtain work in Blanco County, he came to Travis County where he was temporarily employed in helping build the Marshall Ford dam. He intended to return to Blanco County, and did so after he was temporarily out of the county.

Nor did the court err in not sustaining the challenge to the vote of Mrs. R. M. Collins. This voter was a widow and lived with her daughter-in-law who took care of her. The daughter-in-law came to Austin for the purpose of educating her children, maintaining her home in Blanco County, and intended to return there immediately after the school term had ended. Mrs. Collins came with her to Austin, because she had no other to care for her. Under these facts the trial court could find that she had not changed her residence from Blanco to Travis County.

Nor did the court err in refusing to sustain the challenge to the votes of E. H. Pilgrim and wife, Minnie Pilgrim. While they were shown to have resided in Travis County on the date of the election, they were shown to have had a home in Blanco County, where they paid their poll taxes; and that the husband, E. H. Pilgrim, simply left the county to obtain employment and was with a construction company which sent him from place to place where his services were necessary.

**668**

■ Nor did the court err in refusing to sustain the challenge to the vote of Madelyn Casparis. The evidence was sufficient to sustain the finding that she was away from her home and her parents in Blanco County, attending school in San Antonio. Her residence in Blanco County is determined by Art. 2958, which provides, in effect, that a student in college may retain his or her residence in the county where they resided before they became a student.

The same ruling is made with regard to J. F. Koeniger, who was attending school at Denton, Texas.

■ The court did not err in sustaining the challenges to the votes of Ralph Shelton and Mr. and Mrs. Henry Zimmermann, because neither of them had paid a poll tax in Blanco County, where they had resided since August, 1937. They resided in Hays County on January 1, 1937, and neither of them paid a poll tax in Hays County. They were therefore not entitled to vote. Art. 3004, R.S.; Linger v. Balfour, Tex.Civ.App., 149 S.W. 795; McCharen v. Mead, Tex.Civ.App., 275 S. W. 117, 118.

■ The court did not err in refusing to sustain the challenge to the vote of Charlie Boecking, on the ground that he was a resident of Travis County. Like another voter referred to, he was a single man and was working in Travis County because he was unable to obtain work in Blanco County, and was working on one of the dams being constructed in Travis County. His home was in Blanco County and the challenge to his vote was correctly overruled.

Appellant's total vote as found by the trial court was 733. By adding the 4 legal votes of Mr. and Mrs. Klett and Mr. and Mrs. Redford, and deducting the illegal vote of Mrs. Schaeferkoeter, his total vote is 736. Appellee's total vote as found by the trial court was 736. By adding the 3 legal votes of Mr. and Mrs. Crider and B. F. Crider, his total vote is 739; and his contest of the election is sustained. No necessity exists for a determination of the legality or illegality of the remaining votes as contended for or challenged by appellee's cross assignments of error, because the legality or illegality of these votes would merely add to appellee's total vote or deduct from appellant's total vote. We think, however, that the vote of Levi Crownover should have been counted for appellee, and that appellee's challenges to the votes of G. L. Felkner, Mrs. Roy Stobough and Miss Artie Pyle should have been sustained.

The judgment of the trial court will be affirmed.

Affirmed.