**Euel D. HARRISON et al., Appellants,**

v.

**M. V. JAY et al., Appellees.**

No. 3052.

Court of Civil Appeals of Texas.

Eastland.

Dec. 18, 1953.

Rehearing Denied July 29, 1954.

Scarborough, Yates, Scarborough & Black, Abilene, for appellant.

Wilson, Wilson & Logan, San Angelo, Tom Davis, Haskell, for appellee.

LONG, Justice.

On March 29, 1952, an election was held in Kent County for removal of the county seat from Clairemont to Jayton. The result of such election as canvassed by the Commissioners' Court was declared to be 610 for Jayton and 308 for Clairemont. If the result so declared is sustained, Jayton being more than five miles from the center of the county, failed to receive the necessary two-thirds majority of the vote polled to remove the county seat as required by Article 1595, Vernon's Annotated Revised Civil Statutes. This suit was brought by twenty interested citizens of Kent County as a statutory election contest of such election. By agreement of the parties, the case was transferred to the District Court of Haskell County where the trial was held which resulted in a judgment for contestants declaring the result of the election to be in favor of the removal of the county seat to Jayton. Contestees have appealed.

The trial court, in its judgment, excluded 26 votes for Clairemont and 25 votes for Jayton cast by voters in election precincts other than in which the voters lived. The trial court also excluded 5 votes for Clairemont and 7 votes cast for Jayton on other grounds. Both contestants and contestees challenged for various reasons the validity of numerous votes cast at the election. Considerable evidence was introduced and many questions raised in the trial court, but the case has been narrowed down to two questions on this appeal.

Appellants contend the trial court erred in excluding the votes cast in voting precincts outside the residence of the voters because the voting precincts in Kent County were never legally created and because the voters in casting said votes did so in good faith. The other question presented is that the trial court erred in refusing to exclude 57 votes for Jayton for the reason that the voters obtained their poll taxes at

Jayton after the collector had closed his office in Clairemont on January 31, 1952. We do not agree with either of these contentions. The law is well settled that all voters must vote in the election precinct in which they reside and that a vote not so cast is illegal. V.A.T.S., Election Code, Art. 2.06.

In McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278, 287, the court said:

"The appellees cross-assign error to the holding that Johnnie Cook, Ed Ewing, W. L. Green, Henry Hicks, J. W. Higgins, Guy, Millorn, Lewis Peyehouse, Sanford Scroggins, Owen Sheppard, and Jim Wilhelm were illegal voters, and deducting their votes from the total number of votes cast against prohibition. These voters did not vote in the precinct of their residence. This is a constitutional requirement, and cannot be ignored. Const. art. 6, § 2; Gen.Laws 1905, p. 522, c. 11, §§ 7, 10; Cooley's Const.Lim. (7th Ed.) 754; Roper v. Scurlock, 29 Tex.Civ.App. 464, 69 S.W. [456] 458.

"The fact that the voter believed that he lived in a different precinct did not justify his voting there. G. R. Rakeshaw did not vote in the precinct of his residence, and his vote was illegal."

The evidence discloses that the voters who voted in precincts other than the one in which they resided did so in some instances because it was more convenient to vote there or because of their desire to vote in that particular election precinct or on account of the failure of the voters to acquaint themselves with the precinct lines that had been in existence for many years. It is the duty of the Commissioners' Court, under Article 2.04 of the Election Code, which was formerly Article 2933, to divide their respective counties into election precincts by an order to be entered upon the minutes of the court. The Article further provides that they shall immediately thereafter have published such order in some newspaper in the county for three consecutive weeks. If there be no newspaper in the county, then such copy of such order shall be posted in some public place in each precinct in the county. The Commissioners' Court of Kent County passed three different orders subdividing the county into election precincts. These orders are dated August 8, 1910, August 10, 1910 and October 10, 1950. The minutes of the Commissioners' Court do not reflect whether the notices as required by such Article were or were not published or posted. Appellants urge that because the record does not affirmatively show that such notices were published or posted as required by law; that the election precincts created by said orders of the Commissioners' Court of Kent County were void and that the voters in this election had the right to vote in any precinct in the county. The validity of the election precincts had never been questioned prior to this election contest. It is our opinion that the contestees cannot, in this election contest, attack the validity of the orders of the Commissioners' Court establishing the voting precincts. It is our opinion that the same constitutes a collateral attack on such proceedings. In a statutory election contest such as this, only matters that happen on the day of the election and pertain strictly to the election may be inquired into or determined by the court. Hence under that rule the validity of the proceedings establishing the election precincts cannot be determined. Mosler Safe Co. v. Atascopa County, Tex.Civ. App., 184 S.W. 324; West Production Co. v. Penn, Tex.Civ.App., 131 S.W.2d 131 (Writ.Ref.); Yoakum County v. Gaines County, 139 Tex. 442, 163 S.W.2d 393; Davis v. State, 75 Tex. 420, 12 S.W. 957, 961. We hold that the court did not err in excluding the 26 votes cast for Clairemont which were cast in voting precincts other than that in which the voters lived.

It is shown that on January 31, 1952, on the last day for the payment of poll taxes, that the tax collector of Kent County closed his office at Clairemont late in the afternoon and went to Jayton where he remained for some time on that night and issued a number of poll tax receipts in Jay-

ton. It is the contention of contestees that 57 voters who obtained their poll taxes at Jayton on that night were disqualified and that having voted in favor of Jayton, that such votes should have been excluded. There is no attack made upon the qualifications of these voters other than the fact that they obtained their poll tax receipts from the tax collector in Jayton, and that at that time the tax collector had closed his office in Clairemont, the county seat. There is no showing that any person was prevented from obtaining his poll tax receipt at Clairemont because of the fact that the collector had closed his office and gone to Jayton on that night. We do not believe that there is any merit in this contention. The fact that the poll tax receipts were issued in Jayton did not invalidate such receipts and did not disqualify the tax payer from voting. There are numerous authorities in this State which we believe bear out our conclusion. Reynolds v. Cobb, Tex.Civ.App., 196 S.W.2d 60; Warren v. Robinson, Tex.Civ.App., 32 S.W.2d 871; Robinson v. Bostrom, Tex.Civ.App., 21 S.W.2d 580.

We find no reversible error in points presented by appellants and the judgment of the trial court is, therefore, affirmed.