Chester **SETLIFF** et al., Appellants,

v.

Roger **GORRELL** et al., Appellees.

No. 8150.

Court of Civil Appeals of Texas,
Amarillo.

March 15, 1971.

Rehearing Denied April 12, 1971.

Kirby, Ratliff & Sansom, Louis M. Ratliff, Jr., Littlefield, for appellants.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellees.

ELLIS, Chief Justice.

This is a statutory election contest. Chester Setliff and some 300 other contestants, appellants herein, brought suit in the 154th District Court in Bailey County, Texas, seeking to set aside an election held on May 16, 1970, pursuant to H. B. No. 97 (Acts 1969, 61st Legislature, p. 253, Ch. 100, Article 4494q, Vernon's Ann.Civ.St.), thereby contesting (1) the creation of the Bailey County Hospital District with authority to levy annual taxes at a rate not to exceed 75 cents on each $100 valuation of taxable property and (2) the issuance by the Bailey County Hospital District of

bonds in the amount of $950,000. At this election each of the two propositions submitted, i. e., (1) the creation of the hospital district and (2) authorization for issuance of the bonds, carried by a substantial majority of the voters participating therein. The cause was tried by the court without a jury. The trial court entered judgment upholding the election, and the contestants, as appellants, have brought this appeal.

The appellants have asserted five points of error. The points raised shall be considered in two categories within the limits of the court's jurisdiction in an election contest, including the pertinent inquiries as to whether the election was (1) properly ordered and (2) fairly conducted.

In the category of inquiries as to whether the election was properly ordered, appellants contend that (1) H.B. 97 is unconstitutional in part because the Act designated the original directors and empowered them to levy taxes, but made no provision for ordering the election of such original directors by the qualified voters at the same time as the election on the propositions on the creation of the district and the issuance of the bonds; and (2) the published election order failed to establish election precincts as prescribed by law.

■ The rule is well established that the constitutionality of the statute cannot be raised in an election contest. Clark v. Stubbs, 131 S.W.2d 663 (Tex.Civ.App.–Austin 1939, no writ); Becraft v. Wright, 118 S.W.2d 630 (Tex.Civ.App.–San Antonio 1938, no writ); Turner v. Allen, 254 S.W. 630 (Tex.Civ.App.–Beaumont 1923, writ dism'd); Border v. Abell, 111 S.W.2d 1186 (Tex.Civ.App.–Galveston 1937, no writ); Duncan v. Cameron, 285 S.W. 1105 (Tex.Civ.App.–Texarkana 1926, no writ).

In the case of Clark v. Stubbs, supra, the court pointed out that the limitations imposed upon the jurisdiction of the court in election contests deal primarily with the election process, including such matters as whether the election was ordered properly or fairly conducted. In the opinion, the court stated:

"* * * This is an election contest. It is not a civil suit, and the constitutionality of the statute cannot be attacked in this sort of proceeding."

In the recent case of Hodges v. Cofer, 449 S.W.2d 836 (Tex.Civ.App.–Houston, 1st District, 1970, writ ref'd n. r. e.) involving an election contest, after citing and discussing various leading cases dealing with the limitations upon the jurisdiction of the district court in statutory election contests, the court stated:

"All courts have required that the matters of which complaint is made in the election contest relate directly to the election process. The cases cited will not allow a collateral attack on an order excluding land from the water district, nor on a legislative act pertaining to the powers of the district. Harrison v. Jay, 280 S.W.2d 636 (Tex.Civ.App.–Eastland 1953, no writ history); Brown v. Meeks, 96 S.W.2d 839 (Tex.Civ.App.–San Antonio 1936, error dism.); Clark v. Stubbs, 131 S.W.2d 663 (Tex.Civ.App.–Austin 1939, no writ history)."

In appellants' first point they have challenged the legislative designation of all the original directors of the district and the failure to make provisions in the Act for the electorate to elect its own slate of original directors at the same time as the election on the propositions relating to the creation of the district and the authorization of the issuance of bonds. It is here noted that the constitutional provision regarded as basic in considering matters pertaining to hospital districts is set out in Article IX, Section 9, of the Texas Constitution, in the following language:

"The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts."

In 1969 the Texas Legislature enacted H. B. 97 which provides for the "creation, establishment and operation" of the Bailey County Hospital District. Section 4 of the Act provides for the designation of the original directors who are divided into two classes and for annual elections of the members of each of the classes of directors on alternate years. The four directors of class one are to serve until the first of the prescribed annual elections to be held on the first Saturday in April next after the approval of the District by the voters, and the five directors of class two are to serve until the next annual election to be held in April of the following year.

■ We find no constitutional or statutory provision requiring, expressly or by implication, the election of the directors or other officials of a hospital district. Also, it is clear that legislative enactments are controlling regarding the necessity for or conduct of an election in any particular case, and that the right to hold an election such as the one in question, rather than being inherent in the people, is dependent upon statutory authorization. Smith v. Davis, 426 S.W.2d 827 (Tex.Sup.1968); Countz v. Mitchell, 120 Tex. 324, 38 S.W. 2d 770 (1931). Also, see 21 Tex.Jur., 2d, "Elections," § 52. In short, the conduct of elections is primarily a matter for legislative regulation and control. State ex rel. Edwards v. Reyna, 160 Tex. 404, 333 S.W. 2d 832 (1960).

■ Thus, Article IX, Section 9 of the Texas Constitution, Vernon's Ann.St. the constitutional provision pertinent to the matters herein involved, specifically authorizes the legislature to provide by law for the creation, establishment and operation of the hospital district. Pursuant to such authority, the legislature has enacted H.B. 97 with respect to the creation and the administration of the affairs of the Bailey County Hospital District, including the designation of the original directors and a schedule of prescribed elections for each of the two classes of subsequent directors for the district. In view of the foregoing, we overrule appellants' first point of error.

Appellants further contend that the published election order failed to establish election precincts as required by law. The applicable provisions of the Texas Election Code regarding election precincts and polling places are:

Article 2.06, which provides:

"All voters shall vote in the election precinct in which they reside."

Article 2.02(c), which provides:

"* * * The governing body of the political subdivision shall establish the election precincts and designate the polling places for elections held by such subdivision."

Article 2.02(h), which provides:

"All election precincts, by whatever authority established, shall be described by natural or artificial boundaries or survey lines, and shall be designated by name or number. There shall be one polling place, and no more, for each election precinct, and the notice of the election shall state the location of the polling place in each precinct."

H.B. 97 makes this specific provision regarding the election:

"* * * The election order may provide that the entire district shall constitute one election precinct or the county election precincts may be combined for elections."

In Anderson v. Crow, 260 S.W.2d 227 (Tex.Civ.App.–Austin 1953, mandamus overruled), the court sets out the following definition of an election precinct:

"* * * An election precinct is nothing more than a division of a town, county or other political or public entities for election purposes."

For this election, the temporary directors established two election precincts, one con-

sisting of a combination of County Precincts 1, 1–A, 2 and 3, with the polling place at the City Hall in Muleshoe, Texas, and the other election precinct consisting of a combination of County Precincts 4, 5 and 6, with the polling place in the Needmore Community House in Needmore, Texas. There is no showing that the two sets of numbered County Precincts, each comprising an election precinct for this specific election, with a specifically designated polling place in such designated precinct for the purpose of this election, was not in substantial compliance with all statutory requirements applicable to this election. The temporary board of directors in its order and notices of the election established two election precincts and specifically designated therein a polling place. Each of the two precincts was given a name or number which, on this occasion corresponded with the description of the precinct, with each precinct being specifically described by artificial boundaries by reference to the boundaries of the designated County Precincts which comprised each of the two election precincts established for this particular election.

The appellants point out in their brief that a voter may reside in several different election precincts depending on the type of election and that a voter is required to vote in the election precinct in which he resides for each particular type of election. In this connection appellants cite the case of Harrison v. Jay, 280 S.W.2d 636 (Tex. Civ.App.–Eastland 1953, no writ) which holds that all voters must vote in the election precinct in which they reside and that a vote not so cast is illegal. Appellants contend that only those persons residing in County Election Precinct No. 1 (part of Muleshoe, Texas) and County Election Precinct No. 5 (Needmore) could actually vote in the precinct in which they resided. We do not agree with this contention since it appears that there had been established for this particular election the two precincts which are the combined county precincts above described, and there is no

showing of any person not voting in the proper "combined" precinct established for this election.

The evidence does not disclose any confusion on the part of voters as to the boundaries or polling places for each of the two precincts established for this election. Further, the evidence indicates that wide publicity was given to such election and that the turnout of voters was extremely good when compared to other elections held in the county. There is no evidence that any voter was deprived of the right to vote or that the results of the election would have been any different had there been a different establishment of precincts or designation of polling places. Neither is there any showing that any person did not vote because of lack of knowledge of the place he was permitted to vote in this particular election.

■ The contestants have the burden of proving that the errors complained of did in fact materially affect the results of the election. Waters v. Gunn, 218 S.W.2d 235 (Tex.Civ.App.–Amarillo 1949, writ ref'd n. r. e.) ; Awalt v. Beeville Independent School District, 226 S.W.2d 913 (Tex. Civ.App.–San Antonio 1949, writ ref'd n. r. e.) ; Day v. Crutchfield, 400 S.W.2d 377 (Tex.Civ.App.–Texarkana 1965, writ dism'd) Roberts v. Hall, 167 S.W.2d 621 (Tex.Civ.App.–Amarillo 1942, no writ) ; Kennelly v. Gates, 406 S.W.2d 351 (Tex. Civ.App.–Houston 1966, no writ) ; Marks v. Jackson, 130 S.W.2d 925 (Tex.Civ.App. –Galveston 1939, writ dism'd). See also, Tex.Jur.2d, "Elections" §§ 174, 179, and cases cited therein.

■ For the reasons above stated, we overrule appellants' second point of error which relates to the manner of the establishment of precincts for the election.

The second category of inquiries in this election contest deals with those questions raised by appellants as to whether the election was fairly conducted. In connection with the manner of conducting the elec-

tion, appellants contend in their third, fourth and fifth points of error, respectively, that the court should have declared the results of the election void because (1) the election judge at the polling place in Muleshoe, Texas, opened the polls on the date of the election at 8:00 a. m. instead of 7:00 a. m.; (2) there were insufficient polling places established to adequately or conveniently serve the needs of the voters; and (3) no machinery had been set up for prospective voters to render their property for taxation prior to the holding of the election on the issuance of the bonds.

■ Regarding the matter of the opening of the polls at 8:00 a. m. instead of 7:00 a. m. as prescribed by the Texas Election Code, it was not shown by the evidence that such irregularity deprived any person of the privilege to vote or who did, in fact, not vote because the polls in Muleshoe opened at 8:00 a. m. instead of 7:00 a. m. It has been held that such irregularity will not form the basis for invalidating an election in the absence of proof that any voter was disfranchised or that the result of the election was affected thereby. Day v. Crutchfield, supra; Hoover v. Thomas, 35 Tex.Civ.App. 535, 80 S.W. 859 (1904, writ dism'd); Oxley v. Allen, 49 Tex.Civ.App. 90, 107 S.W. 945 (1908, no writ). In Minthorn v. Hale, 372 S.W.2d 752 (Tex.Civ.App.–Beaumont 1963, no writ), the applicable rule is stated as follows:

"The rule is that statutes regulating the manner of holding an election are merely directory, and a departure from their provisions will not, ordinarily, invalidate an election, unless such departure, or such irregularity have affected or changed the result of the election. Hill v. Smithville Independent School District, Tex.Comm.App., 251 S.W. 209."

The appellants' point regarding the opening of the polls at 8:00 a. m. instead of 7:00 a. m. at the polling place in Muleshoe is overruled.

Appellants have contended that the election should be invalidated because no polling places were established in five of the election precincts in the county. Also, the argument was made that the voters in South and West Bailey County, Texas, could neither be adequately or conveniently served by having only two boxes available, one at Muleshoe and the other in Needmore community. Further, appellants point out that Article 2.02(g) of the Texas Election Code requires that "there shall always be at least one consolidated precinct wholly within each commissioner's precinct in the county," and that establishing only the consolidated voting boxes at Muleshoe and Needmore did not comply with such requirement of having at least one consolidated precinct wholly within each commissioner's precinct in Bailey County.

■ A review of the record discloses that the appellants' contention that the alleged requirement under Section 2.02(g) of the Texas Election Code, concerning "at least one consolidated precinct wholly within each commissioner's precinct of the county" was not pleaded or raised in the trial court. Such matter, therefore, cannot be raised for the first time on appeal. Gips v. Red Robin Corp., 366 S.W.2d 853 (Tex.Civ.App.–Houston 1963, writ ref'd n. r. e.); Calvert v. A–1 Bit & Tool Co., 256 S.W.2d 224 (Tex.Civ.App.–Austin 1953, writ ref'd n. r. e.); Plasky v. Gulf Insurance Co., 160 Tex. 612, 335 S.W.2d 581 (1960); Daniel v. Dallas Independent School District, 351 S.W.2d 356 (Tex.Civ.App.–El Paso 1961, writ ref'd n. r. e.); Adcock v. Couser, 442 S.W.2d 490 (Tex.Civ.App.–Waco 1969, no writ). It is noted further that the applicability of all of the subdivisions of Article 2.02 of the Texas Election Code (including subdivision (g) ) is subject to the language in the first paragraph of such section, "Unless a specific statute provides otherwise * * *." As previously pointed out, H.B. 97 governing the election in question "provides otherwise" in that the election may be ordered whereby the whole district (county) shall

constitute one election precinct, or election precincts may be combined. In the absence of proof that such alleged irregularity would have materially affected the result of the election, or that any voter was disfranchised as a result of having the two consolidated precincts, the election will not be set aside. Anderson v. Crow, supra; Waters v. Gunn, supra; Awalt v. Beeville Independent School District, supra; Ex parte White, 33 Tex.Cr.R. 594, 28 S.W. 542 (1894).

The appellants make the further contention that the election on the issuance of bonds should be invalidated because The Bailey County Hospital District had not at the time of the election set up machinery for prospective voters to render property for taxation prior to holding an election for the issuance of bonds as required by the Texas Constitution and the Texas Election Code. In this election, all persons voting were required to execute an affidavit stating that they owned taxable property within the district.

Although Article VI, Section 3a of the Texas Constitution and Article 5.03 of the Texas Election Code require the rendition of property for taxation as a qualification for voting in bond elections, and Article 5.-04 of the Texas Election Code requires the voter to make an affidavit regarding his ownership and rendition of property for taxation, it appears that substantial compliance in this regard was accomplished in the election in question. In the case of Hanson v. Jordan, 145 Tex. 320, 198 S.W. 2d 262 (1946), the Supreme Court of Texas, in speaking of a situation similar to that involved in the instant case, said:

"* * * In other words, each voter at the election was a property owner, and the only reason he had not rendered his property for taxes was the very sufficient one that there were no taxes to pay. To hold that a voter in that situation could not legally cast his ballot would be but to punish a citizen who has been guilty of no dereliction or omission whatever. It would amount to a disfranchisement of the entire property-owning citizenship of Cleveland because for a decade that city very commendably levied no taxes when no taxes were necessary. * * * We do not believe the voters of this state had any such intendment when they adopted Art. VI, Sec. 3a, supra. To hold the election in this case invalid, under the facts stated, would accomplish no good; it would remedy no evil."

To the same effect, see City of Roma v. Gonzalez, 397 S.W.2d 943 (Tex.Civ.App.–San Antonio 1965, writ ref'd n. r. e.); Royalty v. Nicholson, 411 S.W.2d 565 (Tex.Civ.App.–Houston 1967, writ ref'd n. r. e.). Also, in Attorney General Opinion No. M–214, March 21, 1968, the Attorney General of Texas held that where the creation of a district and the question of bonds are to be considered in the same election, and a person voting in such election signs an affidavit setting out that such person owns property subject to taxation within the district, there has been full compliance with the requirements of Article VI, Section 3a of the Texas Constitution and Articles 5.03 and 5.04 of the Texas Election Code. Such opinion, being grounded upon the recognized case law of this state interpreting the pertinent constitutional and statutory provisions, is entitled to considerable weight and consideration. Royalty v. Nicholson, supra. San Antonio Union Junior College District v. Daniel, 146 Tex. 241, 206 S.W.2d 995 (1947). The form of affidavit used by the voters in the election herein involved was identical in all essential respects with the form approved by the Attorney General in said Opinion No. M–214, supra.

■ The record indicates there was a small percentage of the persons voting in the election who did not sign the affidavit, but it is clear from the record that there was an insufficient number to affect the results of the election. Accordingly, we overrule appellants' contention that the

election should be invalidated because the hospital district had not set up machinery for prospective voters to render property for taxation prior to holding the election for the issuance of bonds.

We hold that, in all essential respects, the election was (1) properly ordered and (2) fairly conducted, and that any irregularities which may have occurred did not materially affect the result of the election.

Appellants' points of error are overruled and the judgment of the trial court is affirmed.