Rosie Lee **WRIGHT** et al., Appellants,

v.

**BOARD OF TRUSTEES OF TATUM INDE-
PENDENT SCHOOL DISTRICT
et al., Appellees.**

**No. 797.**

Court of Civil Appeals of Texas,
Tyler.

March 13, 1975.

Rehearing Denied April 3, 1975.

Charles C. Dickerson, Bill F. Griffin, Jr., Center, for appellants.

Gordon Wellborn & Rex Houston, Blake Bailey, Henderson, for appellees.

DUNAGAN, Chief Justice.

This is a school bond election contest. Appellants-contestants, Rosie Lee Wright, et al, allege certain irregularities in the school bond election held by Tatum Independent School District on September 29, 1973. After hearing evidence presented by appellants, upon motion of appellees, the Board of Trustees of Tatum Independent School District, et al, the trial court dismissed the jury and rendered judgment for appellees.

We affirm.

Votes at the election were cast at two polling places: Tatum and the Stewart Community House. A brief summary of the trial court's findings of fact is necessary. The following propositions were submitted to the electors:

"Proposition No. 1: Shall said entire District, as it now exists, assume and pay all outstanding bonded indebtedness for which said District, or any part thereof, is liable or responsible; and, for the purpose of paying the interest on and principal of said bonded indebtedness, shall the Board of Trustees of said District have the power and be authorized to levy and cause to be assessed and collected annual ad valorem taxes at such rates and in such amounts as authorized by the laws under which said bonded indebtedness was issued, with said bonded indebtedness and the outstanding principal thereof being described briefly as follows: Limited tax Schoolhouse bonds, dated 3–15–56, Series 1956, $137,000.00. .51 per cent of Gregg CSC No. 9 (Danville) School Building Bonds, dated 7–1–56, outstanding in the principal amount of $11,500, Series 1956. That portion of the balance of the outstanding bonds that the District will assume is $58.65.

"Proposition No. 2: Shall the Board of Trustees of said District be authorized to levy, and cause to be assessed and collected, an annual ad valorem tax, for the further maintenance of public free schools in the District, of not to excess the rate of one dollar and fifty cents on the one hundred dollar valuation of taxable property in the District?

"Proposition No. 3: Shall the Board of Trustees of said District be authorized to issue the bonds of the District, on one or more series, in the aggregate principal amount of $650,000.00 for the purpose of the construction and equipment of school buildings in the District, and the purchase of the necessary sites therefor, with said bonds to mature, bear interest and be issued and sold in accordance with law; and shall the Board of Trustees be authorized to levy and pledge, and cause to be assessed and collected, annual ad valorem taxes, on all taxable property in the District, sufficient, without limit as to rate or amount, to pay the principal of and interest on said bonds?"

Although the ballot did not contain the propositions verbatim, it appeared as follows:

"OFFICIAL BALLOT

(Place an 'X' in the square beside the statement which indicates the way you wish to vote.)

PROPOSITION NO. 1

☐ FOR THE ASSUMPTION OF BONDED INDEBTEDNESS AND LEVYING

☐ AGAINST THE TAX IN PAYMENT THEREOF.

PROPOSITION NO. 2

☐ FOR

☐ AGAINST MAINTENANCE TAX

PROPOSITION NO. 3

☐ FOR THE ISSUANCE OF BONDS AND LEVYING THE TAX IN PAYMENT

☐ AGAINST THEREOF"

Each of the three propositions received a favorable majority vote: Proposition No. 1, 497 "for" to 368 "against"; Proposition No. 2, 455 "for" to 342 "against"; Proposition No. 3, 485 "for" to 351 "against."

Further, the trial court found that the election was held free of any fraud; that the election officials properly canvassed the returns and certified the results that no voter was denied the right to cast a ballot; and that appellants failed to prove that the will of the people had not been expressed at the polls or that the alleged violations had any significant effect on the outcome of the election.

In their first point, appellants contend that the trial court erred in finding that no one voted who was not a legal voter because the election officials failed to require voters to submit affidavits of property ownership as is required by Arts. 5.03 and 5.04, Election Code, V.A.T.S. Appellants argue that at least 223 of the affidavits taken at the Tatum polling place failed to contain information as to what political subdivision the voters' property had been rendered and whether the voters' property had been rendered in a time and manner prescribed by Arts. 5.03 and 5.04, Election Code, V.A.T.S.

■ Article 5.04(d), Election Code, V.A.T.S., states:

"The ballot of a voter who has been accepted by the election officer as eligible to vote at the election shall never be declared void for any defect or insufficiency in the affidavit or for any misstatement as to property asserted to have been rendered, if the voter in fact is the owner of any property which has been duly rendered for taxation to the subdivision holding the election."

The contestants of an election have the burden of proving that the irregularities of which they complain affected or changed the result of the election. Setliff v. Gorrell, 466 S.W.2d 74 (Tex.Civ.App., Amarillo, 1971, n. w. h.); Minthorn v. Hale, 372

S.W.2d 752, 754 (Tex.Civ.App., Beaumont, 1963, n. w. h.). In the case at bar there is no evidence to indicate that any of the 223 voters had not rendered his or her property to the proper political subdivision in a time and manner prescribed by Arts. 5.03 and 5.04, Election Code, V.A.T.S. Moreover, there are no allegations that the results of the election would be different even if the 223 votes were disregarded.

■ Appellants also contend that none of the voters at the Stewart Community House polling place made an affidavit containing information as to what political subdivision their property had been rendered and whether or not the property had been rendered in a time and manner prescribed by Arts. 5.03 and 5.04, Election Code, V.A.T.S. This contention is without merit because there is no showing that the irregularities of which appellants complain changed the result of the election.

Appellants are contestants of the election and are seeking to invalidate the results of the election. As above stated the trial court found that the results of the election were as follows:

Proposition No. 1: The assumption of bonded indebtedness and levying the tax in payment thereof.

For: 497
Against: 368

Proposition No. 2: Maintenance Tax.

For: 455
Against: 342

Proposition No. 3: The issuance of bonds and levying the tax in payment thereof.

For: 485
Against: 351

Appellants maintain that there is conflicting evidence as to the number of votes cast at the Stewart box "for" or "against" the propositions because the elected officials certified two different results of votes cast at the Stewart box. Plaintiffs' Exhibit Nos. 1 and 19 show that on September 29, 1973, the election officials certi-

fied that the resident qualified voters who owned taxable property and voted at the Stewart box voted as follows:

Proposition #1
For 61
Against 217

Proposition #2
For 56
Against 205

Proposition #3
For 61
Against 210

Plaintiffs' Exhibit No. 20 shows that on October 4, 1973, the election officials certified that the votes of the resident qualified electors at the Stewart box who own taxable property were as follows:

Proposition #1
For 36
Against 161

Proposition #2
For 32
Against 143

Proposition #3
For 33
Against 145

The trial court found that the election officials certified that the resident qualified electors voted in the manner shown by Plaintiffs' Exhibits 1 and 19. If we consider the return of the votes cast at the Stewart box which is more favorable to appellants' (Exhibits 1 and 19) and disregard the "for votes and even allow the "against" votes to be counted, each of the three propositions would still pass. Thus, if the court were to disregard all of the votes cast at the Stewart Community House box, all three propositions would pass by a greater margin.

■■ The legislature amended Art. 5.-04, Election Code, V.A.T.S., in 1967. The purpose of these changes was to replace provisions requiring the tax collector to furnish a certified list of owners of property duly rendered for taxation, for use at the polling place in a bond election, by providing that each voter must sign an affidavit that he is the owner of the duly rendered property, listing by specific description at least one item of property which has been rendered. In Royalty v. Nicholson, 411 S.W.2d 565 (Tex.Civ.App., Houston, 1967, writ ref'd., n. r. e.), the court held that the failure of the tax assessor-collector of the school district to provide a certified list of duly rendered property owners did not render the school bond election void, as providing the certified list was directory rather than mandatory. Therefore, since the requirement that each voter must sign an affidavit stating that he is the owner of duly rendered property was designed to replace the requirement that the tax collector should furnish a certified list of owners of property duly rendered for taxation, we feel that the affidavit requirement is directory rather than mandatory. A departure from directory statutory provisions will not ordinarily invalidate an election, unless such departure affects or changes the result of the election. T. D. Little v. Alto Independent School District of Alto, Cherokee County, 513 S.W.2d 886, 891 (Tex.Civ.App., Tyler, 1974, writ dism., w. o. j.), citing cases. Appellants' first point is overruled.

■ In their second point, appellants maintain that the court erred in upholding the school bond election because the ballot on which propositions 2 and 3 were submitted fails to comply with Art. 20.04, Education Code, V.A.T.S. Appellants contend that Art. 20.04, Education Code, V.A.T.S., requires the propositions to be fully set forth on the ballot. Appellants cite a portion of Art. 20.04(a), Education Code, V.A.T.S., as authority: " * * * Each such election shall be called by *resolution or order* of such governing board or commissioners court, which shall set forth the date of the election, the proposition or prop-

ositions to be submitted and voted on, * * *." (Emphasis added.)

Art. 20.04(a), Education Code, V.A.T.S., does not require that the propositions shall be set forth verbatim on the ballot, but requires that the propositions shall be set forth on the election order. In the case at bar, the propositions were set forth on the election order. The wording of the propositions is in compliance with Art. 20.04(b–d), Education Code, V.A.T.S.

 When a statute which authorizes a special election for the imposition of a tax prescribes the form in which the question shall be submitted to popular vote, the statute should be strictly complied with. But, if the form is not prescribed, then the language of the proposition submitted is not material as long as it substantially submits the question which the law authorizes with such definiteness and certainty that the voters are not misled. Turner v. Lewie, 201 S.W.2d 86, 91 (Tex.Civ.App., Fort Worth, 1947, dismissed); Reynolds Land & Cattle Co. v. McCabe, 72 Tex. 57, 12 S. W. 165, 166 (Tex.Sup.1888). The ballot should contain a description of the proposition submitted in such language as to constitute a fair portrayal of the chief features of the proposition, in words of plain meaning, so that it can be understood by persons entitled to vote. It is not customary to print the full text of the proposition on the ballot, but it is sufficient if enough is printed on the ballot to identify the matter and show its character and purpose. England v. McCoy, 269 S.W.2d 813, 817 (Tex.Civ.App., Texarkana, 1954, dismissed); Turner v. Lewie, 201 S.W.2d 91, supra.

Art. 6.07(3), Election Code, V.A.T.S., provides:

"The form in which any proposition or question to be voted on by the people of any city, county or other subdivision of the State shall be submitted, unless prescribed by statute, city charter, or ordi-

nance, shall be prescribed by the local or municipal authorities submitting it."

 The statutes do not prescribe the form of ballot to be used in this sort of election. The evidence reveals that the entire propositions were posted on the front of the building at which the votes were cast at the Stewart Community House and that the entire propositions were printed in the Henderson Daily News on September 28, 1973. We believe that the ballots contained a fair description of the propositions submitted so that they could have been understood by persons entitled to vote. The wording on the ballot submitted the proposition with such definiteness and certainty that the voters were not misled. Appellants' second point is overruled.

In their third point, appellants maintain that the irregularities in the conduct of the election were such that the appellees failed to substantially comply with the requirements of the Texas Election Code and, thus, the election should be invalidated. In addition to the contentions in their first and second points, appellants make the following complaints:

1. The election officials failed to properly canvass the returns.

2. The election returns were delivered to an improper party contrary to Art. 7.14, § 18(d), Election Code, V.A.T.S.

3. The statements of canvass for both the Stewart and Tatum polling places show evidence of tampering and erasures.

4. The statements of canvass for both polling places are in pencil which is contrary to Art. 7.14, § 18(b), Election Code, V.A.T.S.

5. The poll lists were not certified as is required by Art. 3.02, Election Code, V.A. T.S.

6. There was no school of instruction for those who would hold the election as is

provided for by Art. 7.14(11), Election Code, V.A.T.S.

7. All registers on the voting machines at the Tatum polling place were not set at zero.

The answer to appellants' third point of error is interwoven with our answer to their first two points of error. "In general, the statutes regulating the manner of holding an election are directory and a departure from their provisions will not ordinarily invalidate an election, unless such departure affects or changes the result of the election." T. D. Little v. Alto Independent School District of Alto, Cherokee County, supra, and citing cases. In order to prevail, election contestants must allege and prove particularized material irregularities in the conduct of the election; and establish either (1) that a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities, or (2) that the irregularities were such as to render a determination of the true will of the majority of the voters impossible. White v. Hearne, 514 S.W.2d 765, 767 (Tex.Civ.App., Waco, 1974, n. w. h.); Jordan v. Westbrook, 443 S.W.2d 616, 618 (Tex.Civ.App., San Antonio, 1969, n. w. h.); Marks v. Jackson, 130 S.W.2d 925, 927 (Tex.Civ.App., Galveston, 1939, writ dism.).

There was no showing that any of the alleged irregularities affected or changed the results of the election. Just because some directory provisions of the Election Code were not followed by the election officials would not necessarily invalidate this election. We do not believe that the alleged irregularities were such as to render a determination of the true will of the majority impossible. Appellants' third point is overruled.

For the reasons stated the judgment of the trial court is affirmed.