**Ralph MEDRANO, Appellant,**

v.

**Leo J. GLEINSER, Appellee.**

**No. 13–89–059–CV.**

Court of Appeals of Texas,
Corpus Christi.

April 13, 1989.

Rehearing Denied May 11, 1989.

John Griffin, Jr., Victoria, for appellant.

Charles K. Bluntzer, Victoria, for appellee.

Before DORSEY, UTTER and SEERDEN, JJ.

OPINION

DORSEY, Justice.

This is an accelerated appeal from an election contest. Ralph Medrano was certified as the winner of the November 8, 1988, election for County Commissioner of Precinct 1 in Goliad County, Texas, by a mar-

gin of one vote over his opponent, Leo Gleinser, after a recount of the votes cast,[1] Gleinser filed an election contest suit against Medrano challenging this result on the ground that votes had been illegally cast in favor of Medrano. Following a bench trial, judgment was entered that the election be declared void. The trial court found that illegal votes were cast in the election, that the number of such illegal votes was greater than the number of votes necessary to change the outcome of the election, and that the true outcome of the election could not be determined. Medrano appeals by two points of error. We affirm.

By his first point of error appellant complains that the trial court erred in voiding the election because the uncontroverted evidence showed that illegal votes did not change the outcome of the election. By his second point appellant complains that the trial court erred in failing to make certain requested findings of fact which would have supported his position that the illegal votes cast did not change the outcome of the election.

■ By his election contest suit, appellee challenged the final canvass under Tex. Elec.Code Ann. § 221.003 (Vernon 1986) as not reflecting the true outcome of the election because illegal votes were counted. The burden of proving illegality in an election contest is on the contestant, who must prove that illegal votes were cast in the election being contested and that a different and correct result would have been reached by not counting the illegal votes. *Miller v. Hill*, 698 S.W.2d 372, 375 (Tex. App.—Houston [14th Dist.] 1985, writ dism'd w.o.j.); *Goodman v. Wise*, 620 S.W. 2d 857, 859 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Wright v. Board of Trustees of Tatum Independent School District*, 520 S.W.2d 787, 790 (Tex.Civ.App. —Tyler 1975, writ dism'd).

There was evidence at trial that at least six illegal votes were cast in the present election. Sections 221.009 and 221.011 pro-

vide the following instructions on the manner the trial court is to proceed once it has determined that illegal votes were cast in the race in question:

Section 221.009. Compelling Voter to Reveal Vote

(a) A voter who cast an illegal vote may be compelled, after the illegality has been established to the satisfaction of the tribunal hearing the contest, to disclose the name of the candidate for whom he voted or how he voted on a measure if the issue is relevant to the election contest.

(b) If the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how individual voters voted.

Section 221.011. Illegal Votes Subtracted

(a) If the tribunal hearing an election contest can ascertain the candidate or side of a measure for which an illegal vote was cast, the tribunal shall subtract the vote from the official total for the candidate or side of the measure, as applicable.

(b) If the tribunal finds that illegal votes were cast but cannot ascertain how the voters voted, the tribunal shall consider those votes in making its judgment.

Once the court determines which illegal votes it can subtract and which are still uncertain, Section 221.012 provides that:

(a) If the tribunal hearing an election contest can ascertain the true outcome of the election, the tribunal shall declare the outcome.

(b) The tribunal shall declare the election void if it cannot ascertain the true outcome of the election.

At trial, Neva Thigpen, the voter registrar of Goliad, County, Texas, testified that she kept the voter lists for voting precincts in the county. Her testimony indicted that a number of people, including five who

1. Gleinser was initially certified the winner by a 16-vote margin over Medrano, his closest opponent in a three candidate race.

testified at trial, Teresa Ybarbo, Victor Ybarbo, John Elps, Guadalupe Chavez and Bernice Garza, cast ballots in the election, but had addresses outside the boundaries of Goliad County Commissioner Precinct 1. All five testified that they voted in the general election and in the race for County Commissioner Precinct 1. Teresa Ybarbo, Victor Ybarbo, and John Elps testified that they voted for Medrano. Guadalupe Chavez and Bernice Garza testified that they voted for Gleinser. Had there been no other evidence of illegal votes cast in the race in question, and assuming the trial court had no reason to doubt the testimony of these five witnesses, Section 221.011(a) would require the court to subtract three votes from Medrano and two from Gleinser, making the race a tie.

However, there was also evidence at trial of a sixth illegal voter, Nicolas Davila, who was disqualified from voting because of a prior felony conviction. Davila was called as a witness by Medrano and testified that he voted in the general election and cast his vote in the Commissioner's race for Gleinser, but that at the time he registered to vote, he was not aware that his prior felony conviction disqualified him. Davila's testimony also indicated that he had been upset by an article in the newspaper which indicated that he had voted illegally. He informed Thigpen about his displeasure at the article, and appeared to blame both her and Gleinser for it. When asked at trial if he informed Thigpen about how he voted, he responded as follows:

Q. Did you tell her you voted for Leo Gleinser?

A. I didn't know why he wanted to embarrass me like that, let the whole town know that I'm a convicted felon when I'm trying to forget the past, you know, just trying to move ahead.

■ In the present case, appellant claims that, under Sections 221.011(a) and 221.-012(a), once Davila testified that he cast his vote for Gleinser, the trial court had no choice but to accept his testimony as true, subtract a vote for appellee, and declare appellant the winner of the election.

However, in a nonjury case, the trial court, as factfinder, is the sole judge of the credibility of witnesses and of the weight to be given to their testimony. The court has the power to believe or disbelieve all or part of a witness' testimony. *Parker v. Hawkins*, 668 S.W.2d 444 (Tex.App.—Corpus Christi 1984, no writ); *In re Estate of Page*, 544 S.W.2d 757, 761 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

The factfinder is not compelled to believe uncontradicted testimony that is suspicious or that comes from an interested or biased source. *Casualty Reciprocal Exchange v. Parker*, 12 S.W.2d 536, 537 (Tex.Comm'n App.1929); *Angelina County Lumber Co. v. Reinhardt*, 285 S.W.2d 446, 451 (Tex.Civ.App.—Beaumont 1955, writ ref'd n.r.e.); *see also Owen Development Co. v. Calvert*, 157 Tex. 212, 302 S.W.2d 640, 642 (1957). If the testimony from an interested witness is of such a nature that it cannot readily be contradicted if untrue, an issue is presented as to the credibility of the witness. *See James T. Taylor and Son, Inc. v. Arlington Independent School District*, 160 Tex. 617, 335 S.W.2d 371, 376 (1960); *Law Offices of James R. Bass, Inc. v. Bryan*, 609 S.W.2d 652 (Tex.Civ.App.—San Antonio 1980, no writ); *Victor Equipment Co. v. Denton Independent School District*, 548 S.W.2d 464 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). The same test applies when the witness shows bias.

The conviction of a felony is admissible to attack a witness' credibility. Tex. Rule of Civ.Evid. 609(a). It is not necessary that the conviction be of a crime involving moral turpitude. *See Jackson v. Granite State Insurance Co.*, 685 S.W.2d 16, 17 (Tex. 1985).

In the present case, the evidence is undisputed that Davila was a convicted felon who was ineligible to vote at the time of the election. He was called to the stand by Medrano. Davila's testimony suggests that he was biased against Gleinser because Davila blamed him for damaging his reputation by a newspaper article about his having voted illegally. By the confidential nature of the electoral process, only Davila

knows how he actually voted in the race in question, and his assertions are not readily controvertible by appellee. The effect of Davila's testimony, if believed, would be to subtract a vote from Gleinser and tip in favor of Medrano a race which otherwise would have been evenly divided when the subtractions were made for the other five illegal voters.

We hold that the trial court reasonably could have refused to believe Davila's testimony that he voted for Gleinser, and thus found that it could not ascertain the true outcome of the election. *Cf. Farrell v. Jordan*, 338 S.W.2d 269, 272–73 (Tex.Civ. App.—Houston 1960, writ dism'd). According, we find that pursuant to Section 221.-012, the trial court was authorized to declare the election void. Appellant's first point of error is overruled.

■ As the basis for its judgment, the trial court found that in the Commissioner's race "the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of the election." By point of error two, appellant complains of the trial court's failure to make specific requested findings, e.g., who voted how, why they were illegal voters, etc. As the requested findings were merely elements of the factual conclusion already made by the court, it is not necessary for the court to make the additional requested findings. Tex.R.Civ.P. 299; *see also Baptist Memorial Hospital System v. Bashara*, 685 S.W.2d 352, 355 (Tex.App.— San Antonio 1984), *affirmed*, 685 S.W.2d 307 (Tex.1985). Point of error two is overruled.

The judgment of the trial court is AFFIRMED.