**Damon CHUMNEY, Appellant,**

v.

**Bill CRAIG, et al., Appellees.**

No. 10–90–174–CV.

Court of Appeals of Texas, Waco.

Feb. 21, 1991.

Rehearing Overruled March 14, 1991.

Martin L. Peterson and Garry Lewellen, McMillan & Lewellen, Stephenville, for appellant.

Nancy L. Anglin and W. Ralph Canada, Jr., Hopkins & Sutter, Dallas, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

On May 5, 1990, voters in commissioners' precincts one, two, and four of Hamilton County created the Hamilton County Hospital District. Damon Chumney brought suit against Bill Craig, the presiding officer of the temporary board of directors of the district, contesting the election. C.M. Hatch intervened in the suit as a party contestee. After a nonjury trial, the court denied all relief sought by Chumney and filed findings of fact and conclusions of law. Chumney brings eleven points of error challenging the court's decision. We will affirm.

 Chumney claims that the trial court should have voided the election because of certain alleged irregularities which occurred during the election process. As a matter of policy, declared election results should be upheld unless there is clear and convincing evidence of an erroneous result. *Jordan v. Westbrook*, 443 S.W.2d 616, 617 (Tex.Civ.App.—San Antonio 1969, no writ). There is a presumption that election officials have done their duty in conducting an election, and the contestant has a heavy burden of overcoming the presumption that the officials discharged their duty properly in receiving or rejecting a ballot. *Id.*

The Texas legislature passed an enabling act in 1987 which set forth the procedure to

establish the Hamilton County Hospital District. *See* Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, 1987 Tex.Gen.Laws 130, *amended by* Act of June 14, 1989, 71st Leg., R.S., ch. 591, 1989 Tex.Gen.Laws 1960. Under the 1987 act, a five-member temporary board of directors was appointed by the commissioners court of Hamilton County, and a proposition for the creation of a hospital district was placed before the voters. The electorate rejected the proposition and, thus, the district was not created. In 1989, the legislature amended the 1987 act, providing a lower maximum tax rate and different boundaries for the district and making procedural adjustments necessary to effect these two substantive changes. *See id.* Under this amendment, a five-member board of directors was appointed by the commissioners court, and on May 5, 1990, the board again submitted the issue of the creation of a hospital district to the electorate. This time the proposition passed and the district was created.

■ Craig and Hatch challenge Chumney's "standing" to contest the election, asserting that there was no proof that he was "a qualified voter of the territory covered by [the] election." *See* TEX.ELEC.CODE ANN. § 233.002 (Vernon 1986). At trial, Chumney produced his voter's registration card showing him to be a qualified voter in Hamilton County and testified that he resided within precinct four, a precinct included in the district. Craig and Hatch complain that, because his name was shown in the petition as "Damond Chumney" and the name on his registration card was "Damon L. Chumney," there was no proof that "Damond Chumney" was a qualified voter. Before trial, Chumney sought a trial amendment changing the contestant's name in the petition to "Damon Chumney." Although the court granted his request, the amendment was never filed of record. Despite Chumney's failure to file the amendment, there was no fatal variance between the pleadings and the proof. Under the rule of *idem sonans*, if a name, as spelled in a legal document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accept-

ed method, a sound practically identical to the correct name as commonly pronounced, then the name thus given is a sufficient identification of the individual referred to, and no advantage can be taken of the clerical error. *Dingler v. State*, 705 S.W.2d 144, 145 (Tex.Crim.App.1984); *Means v. Protestant Episcopal Church Council*, 503 S.W.2d 591, 592 (Tex.Civ.App.—Houston 1973, writ ref'd n.r.e.). We believe that the rule applies in this instance and hold that Chumney had standing to bring the suit. *See id.*

■ Chumney sought relief under the Election Code as well as under the Uniform Declaratory Judgments Act. *See* TEX.ELEC. CODE ANN. § 221.012(b) (Vernon 1986); TEX. CIV.PRAC. & REM.CODE ANN. §§ 37.003, 37.-004 (Vernon 1986). The court concluded, however, that it could not grant declaratory relief because of a defect of parties and that it lacked jurisdiction to hear the declaratory judgment action because the unconstitutionality of an enabling statute is not a proper subject of inquiry in an election contest. Chumney alleges, in points eight and nine, that the court erred in these conclusions because he had served all necessary parties and because he had abandoned his claim that the enabling act was unconstitutional. We do not consider these conclusions because Chumney, as we have already stated, had standing to bring the suit under the Election Code. *See* TEX. ELEC.CODE ANN. § 233.002 (Vernon 1986). Had the court concluded that this was a proper declaratory action, the same issues would have been presented that were before it in Chumney's action brought under the Election Code. Chumney would have had the same burden of proof in a declaratory judgment action as under the Election Code. *See McCart v. Cain*, 416 S.W.2d 463, 465 (Tex.Civ.App.—Fort Worth 1967, writ ref'd). The Election Code afforded him all of the rights and potential relief he could have received under the Uniform Declaratory Judgments Act, so the court's conclusions concerning its inability to grant declaratory relief are immaterial. Accordingly, we overrule points eight and nine.

■ In point one, Chumney relies on *Countz v. Mitchell*, 120 Tex. 324, 38 S.W.2d 770 (1931), claiming that the election was void because it was not called by "the authority designated by law." He asserts that the temporary directors appointed under the 1987 act should have called the May 1990 election rather than the directors who were appointed after the 1989 amendment. The 1987 act provides in part:

SECTION 2.01. APPOINTMENT OF TEMPORARY DIRECTORS. On the effective date of this Act, the commissioners court of Hamilton County shall appoint five persons to serve as temporary directors of the district. The court shall appoint one person from each commissioner precinct and one person to represent the district at large.

SECTION 2.02. VACANCY IN OFFICE. A vacancy in the office of temporary director shall be filled by appointment made by the commissioners court of Hamilton County. A person appointed to fill a vacancy for a commissioner precinct must be a resident of that commissioner precinct.

Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, §§ 2.01, 2.02, 1987 Tex.Gen.Laws 130, 131. The 1989 amendment provides in part:

SECTION 2.01. APPOINTMENT OF TEMPORARY DIRECTORS. On the effective date of this Act, the commissioners court of Hamilton County shall appoint five persons to serve as temporary directors of the district. The court shall appoint one person from each commissioner precinct *included in the district* and *two persons* to represent the district at large....

SECTION 4. On the effective date of this Act, the commissioners court shall name a person to serve as a temporary director to represent the district at large. At the time the commissioners court names this person, the person serving as a representative from commissioners precinct 3 is removed as a temporary director.

Act of June 14, 1989, 71st Leg., R.S., ch. 591, §§ 1, sec. 2.01, 4, 1989 Tex.Gen.Laws 1960.

Under section 2.01 of the 1987 act, the commissioners court appointed Everett Vandiver to represent precinct one, Paul Schwalbe to represent precinct two, Barry Christian to represent precinct three, David Lengefeld to represent precinct four, and Rusty Harris (who also lived in precinct three) to represent the district at large. After the 1989 amendment, the commissioners court appointed Ramon Haile, Bill Craig, Faye Schrank, David Lengefeld, and T.P. Medlock as temporary directors, and these directors called the May 1990 election. Although we cannot ascertain from the record what areas the new directors represented, we presume that Lengefeld continued to represent precinct four.

Chumney maintains that the new temporary directors should not have been appointed because section 4 of the amendment directed the commissioners court to appoint one additional person to represent the district at large, thereby removing the temporary director representing precinct three. In construing section 4, we should look diligently for the intention of the legislature. *See Burton v. Ferrill*, 531 S.W.2d 197, 199 (Tex.Civ.App.—Eastland 1975, writ dism'd). Our construction of the statute should not render it absurd or meaningless if we can ascertain a rational, expressive and wholesome meaning from the language used. *See id.* Section 4 of the amendment can be interpreted to direct that only one different temporary director should have been appointed. If the commissioners court had followed this interpretation, however, two other directors would of necessity also have been replaced. Harris, who originally represented the district at large, resided in precinct three and could no longer serve as a temporary director, and Schwalbe, who originally represented precinct two, had died. Lengefeld was appointed both times, so no question exists about his authority to serve as a temporary director. Only one director could have continued to serve, and did not, after the amendment—Everett Vandiver. Vandiver testified that after the 1987 election the

temporary directors "disbanded" and that he believed his term as director had ended.

"A statute should not be shorn of its effectiveness if its purpose can be achieved by a reasonable interpretation." *See id.* We do not interpret section 4 of the amendment to require that the original directors continue their service after the amendment. We believe that its purpose was to assure that nonresidents of the district not serve as directors. Nowhere did section 4 provide that the other original directors must continue their service, nor did it address the fact that a resident of precinct three was serving as the director at large. Because amended section 2.01 required the commissioners court to appoint five persons, without addressing any continued service of original directors, the commissioners court followed the amended statute explicitly. We hold that there was no violation of the statute's requirements.

Additionally, assuming that the original directors were to continue their service, the commissioners court had the authority under section 2.02 of the 1987 act to fill vacancies. *See* Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, § 2.02, 1987 Tex.Gen. Laws 130, 131. The precinct-two position was vacant because Schwalbe had died. The precinct-three position and the at-large position became vacant because the amending act removed precinct three from the district. Because section 2.02 gave no guidance on what constituted a vacancy, the commissioners court could have treated the precinct-one position as vacated due to Vandiver's belief that his term had ended. Therefore, under this section, the commissioners court could have filled Vandiver's, Schwalbe's, and Harris's positions. Because Christian was replaced by a new at-large director, and Lengefeld remained a director, the same directors who were actually appointed would have served if, as Chumney insists, the commissioners court had treated the original directors as still continuing their service. Thus, all five directors can be deemed to have been properly serving at the time they called the second election.

The facts of the *Countz* case distinguish it from this situation. In *Countz,* the issue was whether a judge had the authority to call an election to form a high school district when the applicable statute required that the county board of trustees call the election. *Countz,* 38 S.W.2d at 770. Here, persons duly appointed by the commissioners court, acting as temporary directors, called the May 1990 election. This is not a case where a judge or a different authority, other than the temporary directors, called the election. We therefore hold that the temporary directors appointed under the 1989 amendment had the authority to call the May 1990 election. We overrule point one.

■ Points two and three concern the sufficiency of the petition presented to the directors before they called the election. Chumney alleges that: (1) the directors called the election based upon a petition, rather than ordering the election under section 3.02(a) of the 1987 act; (2) the petition was perhaps "deficient" in its form; and (3) there was insufficient evidence showing that the signers of the petition were registered voters. *See* Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, § 3.02(a), 1987 Tex.Gen.Laws 130, 131. Irrespective of any deficiencies in the petition, the statute gave the temporary directors unconditional authority to order an election. *See id.* Section 3.02(b) merely specified when the temporary directors were *required* to call an election. Because section 3.02(a) conferred unlimited authority upon the directors to order the election, the directors were, as a matter of law, acting within their authority when they called the election. We overrule points two and three.

■ In point four, Chumney claims that the evidence was insufficient to support the court's finding that the "published notices of the election substantially complied" with the notice provision of section 3.04 of the 1987 act. *See* Act of August 3, 1987, 79th Leg., 2d C.S., ch. 42, § 3.04, 1987 Tex.Gen. Laws 130, 131. Section 3.04 provides:

> The temporary directors shall give notice of the election by publishing a substantial copy of the election order in a news-

paper with general circulation in the proposed district once a week for two consecutive weeks. The first publication must appear at least 35 days before the date set for the election.

*Id.* Here, the official notice of the election was first published in *The Hamilton Herald–News* thirty days, rather than "at least thirty-five days," prior to the election.

■ In point seven, Chumney misplaces the burden of proof when he states that the court "erred in relying on the doctrine of substantial compliance as a basis to uphold the election, because such theory was not pleaded." Substantial compliance was not an affirmative defense to be pleaded and proved in this case. Rather, Chumney had the burden to prove: (1) that there was a failure of substantial compliance with the statutory provision or (2) that the failure of strict compliance with the notice provision materially interfered with the election and the right of the electors freely to participate therein. *See Setliff v. Gorrell,* 466 S.W.2d 74, 78 (Tex.Civ.App.—Amarillo 1971, no writ); *Pollard v. Snodgrass,* 203 S.W.2d 641, 644 (Tex.Civ.App.—Amarillo 1947, no writ).

In *Turner v. Lewie,* 201 S.W.2d 86, 88–89 (Tex.Civ.App.—Fort Worth 1947, writ dism'd), the court stated: "It is usually held that the required notice of a special election constitutes a condition upon which authority is granted to hold the election and that there must be a *substantial compliance* with the law." (Emphasis added). Substantial compliance is sufficient unless the contestant shows that the failure of strict compliance materially interfered with the election and the right of the electors freely to participate therein. *Pollard,* 203 S.W.2d at 644; *see also Branaum v. Patrick,* 643 S.W.2d 745 (Tex.App.—San Antonio 1982, no writ); *Royalty v. Nicholson,* 411 S.W.2d 565 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). The court in *Turner* voided the election in question, holding that substantial compliance with a publication requirement did not exist where *no* notice was published. *Id.* To be in strict compliance with the statute's notice provision, the directors should have

published the official notice no later than the March 29 weekly issue of the *Herald–News,* whereas it actually appeared in the next issue. There was evidence that when the directors placed the official notice in the April 5 issue they relied upon a time-table prepared by the Secretary of State's office which provided for thirty days notice before the election. The only matters in the election order not covered in the March 29 issue (described below) were the exact wording of the proposition and the specific location of the voting boxes, information which appeared in the official notice in the April 5 issue.

We hold that the April 5 notice substantially complied with the statute's notice provision. *See* Act of August 3, 1987, 79th Leg., 2d C.S., ch. 42, § 3.04, 1987 Tex.Gen. Laws 130, 131; *Pollard,* 203 S.W.2d at 644 (holding that five days notice of a special election, instead of the required six days notice, substantially complied with the statute "in view of the fact that no voter was deprived of his privilege of suffrage by virtue of the short delay in posting the notices ..."). Chumney presented no proof that the failure of strict compliance with the notice provision materially interfered with the election and the right of the electors freely to participate therein. The evidence revealed that this was a highly publicized election: a front-page story covering the election appeared in seven out of the eight weekly issues of the *Herald–News* preceding the election; more than half of the front page, including the lead story, in the March 29 issue concerned the election, giving the date of the election, the boundaries of the district, the amount of taxes that could be levied by the district and explanations of differences between the current proposal and the election held two years before; a town hall meeting was held two weeks before the election; an "open forum" was held at the Farm Bureau's offices two weeks before the election; and letters to the editor were published in the *Herald–News.* Because we hold that the April 5 notice substantially complied with the statute and because Chumney presented no evidence that the failure of strict compliance with the notice provi-

sion materially interfered with the election and the right of the electors freely to participate therein, points four and seven are overruled. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Pollard,* 203 S.W.2d at 644.

■ Chumney's points five and eleven address the qualifications of the voters. In point five, he maintains that the court erred in finding that the evidence did not sufficiently establish that votes of unqualified persons were cast and counted in the election. In point eleven, he attacks the court's conclusion that, because all qualified voters residing within the proposed hospital district were eligible to vote, election officials did not have to test or examine the qualifications of the voters. As Craig and Hatch point out in their brief, even if Chumney were correct in his argument that only property owners were entitled to vote and that the election officials should have tested the voters' qualifications, the record does not contain any evidence that any such voter—a person not owning taxable property—cast a ballot in the election. Further, the record does not reflect that votes by unqualified persons affected the outcome of the election. The contestant in an election contest has the burden of proving illegality or fraud. *Medrano v. Gleinser,* 769 S.W.2d 687, 688 (Tex.App.—Corpus Christi 1989, no writ); *Goodman v. Wise,* 620 S.W.2d 857, 859 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). He must prove not only that voting irregularities occurred but also that they did in fact materially affect the results of the election. *Goodman,* 620 S.W.2d at 859.

■ Citing no authority, Chumney alleges in point ten that, because the wording in section 221.003 of the 1985 Election Code differs from the "predecessor statutes," a contestant's burden of proof has changed. Specifically, he claims that a contestant need not show that defects in the election process "directly affected particular votes in order to support a conclusion that the true result cannot be determined." Section 221.003 provides:

(a) The tribunal hearing an election contest shall attempt to ascertain whether *the outcome of the contested election,* as shown by the final canvass, *is not the true outcome* because:

(1) illegal votes were counted; or

(2) an election officer or other person officially involved in the administration of the election:

(A) prevented eligible voters from voting;

(B) failed to count legal votes; or

(C) engaged in other fraud or illegal conduct or made a mistake.

(b) In this title, "illegal vote" means a vote that is not legally countable.

(c) This section does not limit a provision of this code or another statute expanding the scope of inquiry in an election contest.

TEX.ELEC.CODE ANN. § 221.003 (Vernon 1986) (emphasis added).

Whether or not Chumney should have shown how these alleged irregularities "directly affected particular votes," he had the burden of showing that the outcome of the election was not the "true outcome" because of such irregularities. *See id.* We believe that the prior cases establishing how an election contestant meets his burden of proof remain viable in light of *Medrano. See Medrano,* 769 S.W.2d at 688. In *Medrano,* the court cited cases decided prior to the enactment of the 1985 Election Code as authority for its holding that "the burden of proving illegality in an election contest is on the contestant, who must prove that illegal votes were cast in the election being contested and that a different and correct result would have been reached by not counting the illegal votes." *Id.* Because Chumney failed to show that illegal votes were cast, i.e., votes cast by persons who did not own property, and that if any were cast, a different and correct result would have been reached by not counting the illegal votes, we overrule points five, ten and eleven. *See id.*

■ Chumney complains in his sixth point that the court's finding that the "ballot proposition was worded with sufficient definiteness and certainty as to fairly por-

tray the chief features thereof in words of plain meaning, so that it could be understood by the persons entitled to vote," is against the great and overwhelming weight of the evidence. Chumney admits that the ballot submitted the proposition in the statute's exact language. He believes, however, that the "same was nevertheless fraught, by reason of lack of certainty, with the *danger of misleading the voters.*" The wording of the ballot proposition was sufficient as a matter of law, however, because it was prescribed by the enabling statute. *See* Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, § 3.06, 1987 Tex.Gen. Laws 130, 131; *Wright v. Board of Trustees of Tatum Indep. School Dist.,* 520 S.W.2d 787, 792 (Tex.Civ.App.—Tyler 1975, writ dism'd). We overrule Chumney's point six.

For the reasons stated, we affirm the judgment.

CUMMINGS, Justice, dissenting.

The issue before us is whether the special election of May 5, 1990, creating a Hamilton County Hospital District (HCHD) was conducted in accordance with the law concerning special elections.

As outlined in the majority opinion, enabling legislation was passed in 1987 setting forth the procedure to establish the HCHD. Following that procedure, the County Judge appointed five temporary directors who called for an election on the issue. The voters rejected the formation of a hospital district at that election.

The next important event was that the ten-member board of directors of the charitable hospital corporation obtained an amendment to the enabling act, effective June 14, 1989, which changed or amended the original 1987 enabling act in two ways:

1. Changed the boundaries of the HCHD by eliminating County Commissioner Precinct No. 3.
2. Changed the maximum tax rate from 75¢ to 25¢.

All of the changes in the enabling act were made *without giving any notice* to the County Judge or Commissioners' Court of Hamilton County, the temporary directors of the hospital district or to the general public. No newspaper or media coverage was ever provided to the voters of Hamilton County concerning these changes when the legislation was passed in May 1989 or when the legislation became effective on June 14, 1989. The opponents of the hospital district were not made legally aware of these changes until the notice of election was published in the Hamilton Herald News on April 5, 1990, only 30 days prior to the election in question.

The notice provision of the enabling act provided:

SECTION 3.04. NOTICE. The temporary directors shall give notice of the election by publishing a substantial copy of the election order in a newspaper with general circulation in the proposed district once a week for two consecutive weeks. The first publication *must appear at least 35 days before* the date set for the election. Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, 1987 Tex.Gen. Laws 130.

(Emphasis added).

It was stipulated by the parties that only 30 days notice was given instead of the 35 days required by the act. So, only 30 days prior to the election on May 5, 1990, the opponents of the proposition first learned that Commissioners' Precinct 3 had been eliminated from the proposed hospital district. Precinct 3, according to the evidence, was an area where major opposition to the hospital district had been in the first election because the Hico hospital already served that area. It is apparent the opponents of the hospital district found out only 30 days prior to the election that they could not count on the voters in Precinct 3 who had previously voted against the creation of the hospital district.

The question before us is to determine whether the 30 days notice given was substantial compliance with the notice requirement of *at least 35 days.*

The majority follows Appellees' contention that the matter of publishing notices is only directory and not mandatory, thus allowing the treatment of irregularities as

informalities which do not vitiate the election. Appellees cite several cases in support of the contention that the matter of legal notice in this case is only directory, but all of said cases are distinguishable because they involved general law elections.

In *Turner v. Lewie*, the court noted the distinction between general law elections and special law elections, where it stated:

Laws requiring notice of general elections, held on days fixed by law, are usually held to be directory only, because it is presumed that time and place of the election is known to all without special notice. But the rule is different as to special elections. It is usually held that the required notice of a special election constitutes a condition upon which authority is granted to hold the election, and that there must be substantial compliance with the law. It has often been held that failure to give the required notice invalidates the special election.

*Turner v. Lewie*, 201 S.W.2d 86, 88–89 (Tex.Civ.App.—Fort Worth 1947, writ dism'd).

The Appellees and the majority opinion seem to follow the rule that irregularities in an election will not invalidate the election if voters had notice of the election through other means than legal notice, such as newspaper articles, and that to invalidate such an election it must be shown that the result of the election would have been different but for the irregularities complained of. In *Turner* the court refused to follow that rule and stated what I believe to be the proper rule, as follows:

The proceedings of the election, and those leading up to it, must themselves give sufficient notice regarding the election and its purposes. It is not enough that some or even all of the voters learned of the election through reading news items, or by conversations with other citizens, or by hearing of it through any means other than the notices required to be given by the statutes regulating the election. If there is not a substantial compliance with the law in the proceedings leading up to the elec-

tion, there is no valid election. The will of the majority of the voters might be expressed in any number of ways, as in a mass meeting, or by petition, and yet not amount to an election. Our system of government depends for its existence on orderly elections, held *strictly in accordance* with the law, and surrounded by all of the safeguards which the lawmakers have seen fit to impose. It is important that the voters receive *legal notice* of the election and the purposes for which it is to be held.

*Id.* at 89 (emphasis added).

Further, in *Coffee v. Lieb* the court stated:

'Where, as is usually the case in special elections, the time and place for holding the same are not fixed by law but are to be fixed by some authority named in the statute after the happening of a condition precedent, the statutes as to giving notice thereof are considered *mandatory*, and a failure to give notice or issue proclamation of such an election will render it a nullity.'

*Coffee v. Lieb*, 107 S.W.2d 406, 410 (Tex. Civ.App.—Eastland 1937, no writ) (emphasis added).

Appellees rely on *Pollard v. Snodgrass*, 203 S.W.2d 641, 644 (Tex.Civ.App.—Amarillo 1947, writ dism'd), which was a special local-option election wherein the notice of election was required to be posted six days prior to the election. Appellees herein stated that only five days' notice was given and the court held that to be substantial compliance. Appellees contend that *Pollard* holds that variances greater than 15% constitute substantial compliance. I find the court's reasoning to be more narrow than Appellees contend. The court found that "the time of actual posting and that provided by the statute could not have been more than a few hours," and the court held that was substantial compliance. *Id.* at 644.

In *Coffee*, six days' notice was required by statute for a special election involving local option and the clerk only posted notice three days prior to the election. The court found that not to be substantial compliance and held the election to be void.

In *Pickard,* the Kentucky court followed that same law as the Texas rule for special elections and the opinion states: "Where a special election is required by statute to be advertised a given time before the day of election, such advertisement is 'mandatory' and election is void unless there is a substantial compliance with the statute." *Pickard v. Cross,* 292 Ky. 70, 165 S.W.2d 986 (1942). The Kentucky court, in holding the election void for failing to substantially comply with the notice requirement, cited *Pendley v. Butler County,* 229 Ky. 45, 16 S.W.2d 500 (Ky.Ct.App.1929), a case where there was a thirty-day notice requirement for a special election and only twenty-seven days was given. That Kentucky court found there was not substantial compliance with the notice requirement and voided the election.

Texas courts have consistently held in special elections that legal notice provisions are mandatory and require substantial compliance with the law. *Branaum v. Patrick,* 643 S.W.2d 745, 749–50 (Tex.Civ.App. —San Antonio 1982, no writ); *Christy v. Williams,* 292 S.W.2d 348, 350 (Tex.Civ. App.—Galveston 1956), *writ dism'd w.o.j.,* 156 Tex. 555, 298 S.W.2d 565 (1957); *Turner v. Lewie,* 201 S.W.2d 86, 88–89 (Tex.Civ. App.—Fort Worth 1947, writ dism'd); *Coffee v. Lieb,* 107 S.W.2d 406, 410 (Tex.Civ. App.—Eastland 1937, no writ); Op.Tex. Att'y Gen. No. JM–747 (1987); 31 Tex.Jr.3d *Elections* § 107 (1984). *Turner* held that our system of government depends for its existence on orderly elections, held strictly in accordance with the law. *Turner,* 201 S.W.2d at 89. *Turner* also rules out consideration of other means of disseminating notice of an election to the voters than that prescribed by statute. *Id.* Accordingly, all the other publicity concerning the election should not be considered by the court in determining whether there was substantial compliance. The *Pendley* case is closest to the facts of this case, where the court found that twenty-seven days' notice did not substantially comply with the thirty-day notice requirement. Following *Pendley,* I find that the thirty-day notice given in this case did not substantially comply with the mandatory notice of *at least 35*

*days.* To rule otherwise renders the statutory requirement of *at least 35 days* meaningless.

In this case there were 919 votes cast for the creation of the hospital district and 880 against, which is a difference of 39 votes out of 1,789 total votes. The opponents to the proposition, Appellant herein, were not legally aware that Precinct 3 had been eliminated from the proposed district until the April 5, 1990, edition of the Hamilton Herald News, just 30 days prior to the election. The proponents of the district, Appellees herein, had known of the boundary change since May 1989. By limiting the Appellant to only 30 days' notice of a major change in the size of the proposed district which eliminated Appellant's strongest precinct, it is my opinion that the Appellant was placed at a significant disadvantage which materially interfered with the election. It is obvious that the Appellant was entitled to *at least 35 days* notice of this change. Under these circumstances and following the rationale in *Pendley,* it is my opinion that the 30 days' notice given was not substantial compliance with the notice provision and that the failure to give 35 days' notice materially interfered with the election and the right of electors to freely participate therein. Accordingly, I respectfully dissent from the majority opinion and would reverse the judgment of the trial court.