Larry Mike Matthews v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-054-CR

     LARRY MIKE MATTHEWS,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 380th District Court
Collin County, Texas
Trial Court # 380-80563-01
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Larry Mike Matthews appeals his conviction by a jury for a felony offense of driving while
intoxicated. Finding an enhancement allegation true, the jury assessed his punishment at 20 years
in the Texas Department of Criminal Justice, Institutional Division, and a fine in the amount of
$1,000. He asserts in three issues that he was denied his constitutional right to counsel in the
convictions used for the purpose of enhancement and was therefore denied his constitutional rights;
that the stop leading to his arrest was unconstitutional; and that the evidence is factually
insufficient to support his conviction. In a supplemental brief, he presents two additional issues,
asserting that the trial court lacked jurisdiction as one of the enhancement convictions used to
make his case a felony was not for driving while intoxicated, and, based upon that same assertion,
that the evidence is factually insufficient to show that he was convicted of driving while intoxicated
in that prior conviction. We affirm.
      Matthews contends in issue one that he was denied his constitutional right to counsel in the
convictions used for the purpose of enhancement. But the judgments in the prior convictions
relied upon by the jury for enhancement reflect that the trial courts admonished Matthews of the
consequences of his plea of guilty. The record shows that counsel represented him at the time he
entered his guilty plea in his prior felony conviction. There is nothing in the record to show that
Matthews was denied his right to counsel, only that he did not wish to have one.
      While Matthews refers to the fact that counsel did not represent him when he was convicted
in his prior misdemeanor convictions, his real complaint is that he was unaware of the
consequences of enhancement in the future because the trial courts failed to admonish him about
the dangers of self-representation. There is nothing in the record to reflect that Matthews was
unaware of the consequences of future enhancement or that the trial courts in the prior convictions
failed to admonish him concerning the dangers of self-representation.
      We also note that his objections to proof of these prior convictions at the trial court do not
comport with the objection he presents in issue one in this appeal. Consequently, nothing is
presented for review. Banda v. State, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994). We overrule
issue one.
      Matthews originally states that his second issue is that he failed to receive reasonably effective
assistance of counsel. When he restates the issue in his brief, he argues that the stop leading to
his arrest was unconstitutional. Inasmuch as he presents no argument to the effect that he failed
to receive reasonably effective assistance of counsel, we assume that the second issue is that the
stop leading to his arrest was unconstitutional.
      Chad Dylan Poling, a Texas Highway Patrol Trooper, testified that he stopped Matthews
because his rear license plate light was out. He acknowledged that when he first approached
Matthews, he told him that he was stopping him for speeding, but then corrected himself by telling
Matthews he was stopping him because of the defective license plate light. Matthews
acknowledges that this is a sufficient reason for stopping his vehicle. Matthew's argument in this
appeal is based upon the officer's original statement that he was stopping Matthews for speeding,
a statement that he immediately corrected. We fail to see how the officer’s misstatement affects
the legality of his stop of Matthew’s vehicle because of its defective license plate light. We also
note that Matthews presented no motion to suppress nor any objection to any testimony concerning
events that transpired after the stop. Consequently, nothing is presented for review. Tex. R. App.
P. 33.1(a); Roberts v. State, 545 S.W.2d 157, 158 (Tex. Crim. App. 1977) (objection to evidence
illegally obtained may be preserved either by filing a pretrial motion to suppress or by objecting
when the unlawfully obtained evidence is admitted). We overrule issue two.
      Matthews contends in issue three that the evidence is factually insufficient to support his
conviction. In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the "in the light
most favorable to the prosecution" construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask, "whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      Trooper Poling testified that after stopping Matthews, he observed an empty beer can in the
bed of Matthews's truck and that he could smell alcohol inside the vehicle. He related that there
was an empty beer can and a full open beer inside the vehicle. He said that Matthews's speech
was slurred and his eyes were bloodshot. Poling indicated that when he asked Matthews how
much he had to drink, Matthews said he did not know and then said, "You don't smell anything
on my breath, I just ate a Breathalyzer." Trooper Poling described Matthews's poor performance
on three field sobriety tests: the standardized horizontal gaze nystagmus test, the finger count test,
and the hand-slap exercise. He stated that he did not perform certain other standard tests because
Matthews had indicated that he previously had hip replacement surgery. A videotape depicting
what happened after Officer Poling stopped Matthews's vehicle was admitted into evidence.
      Trooper Poling acknowledged that Matthews was not driving his truck erratically, nor was
he weaving back and forth. He did indicate that Matthews weaved to the left a little bit after he
activated his lights. He stated that he could smell alcohol on Matthews. He acknowledged that
depressants, some inhalants, and seizure medication could affect the horizontal gaze nystagmus
response. He also acknowledged that a medical condition such as head trauma could cause the
nystagmus response. He acknowledged that Matthews did not have a difficult time standing, but
did have a difficult time following instructions. Trooper Poling testified that he had seen
intoxicated people before who had not had problems standing. He indicated that based upon his
training, experience, and observations of Matthews at the scene, and Matthews's behavior on the
videotape, in his patrol vehicle, and at the jail, his opinion was that Matthews had lost the normal
use of his mental and physical faculties. He stated that, in his opinion, consumption of alcohol
caused Matthews's intoxication. In addition, the State presented fingerprint evidence to establish
Matthews's prior convictions. 
      Tammy Akin testified that she is the common-law wife of Matthews. While acknowledging
that she was intoxicated when Trooper Poling stopped her and Matthews, she testified that
Matthews had not had anything to drink that night. She stated that Matthews had a few beers the
day before. She denied that Matthews was intoxicated when they were stopped by Trooper Poling. 
She said she could not recall telling Trooper Poling that she did not know how many beers
Matthews had. She also did not recall hearing Trooper Poling tell her that Matthews had told
them that he had 4-5 beers nor replying, "That sounds about right. Maybe a six-pack.” She
indicated that she understood all of this is on tape. She said she might have told Trooper Poling
that Matthews had a six-pack that night because she thought Trooper Poling was talking to her. 
She acknowledged she also could not recall telling Trooper Poling that she had had three or four
beers. She testified that Matthews is “just not a big drinker.” Akin acknowledged that she was
serving a one-year sentence for forgery of a check.
      Matthews only refers us to the testimony of Tammy Akin, his common-law wife, that he had
not had anything to drink before Trooper Poling stopped them. However, as we have previously
stated, a jury's verdict is not manifestly unjust merely because it resolved conflicting views of
evidence in favor of the State. Cain, 958 S.W.2d at 410. We hold that the evidence is factually
sufficient to support Matthews's conviction because the proof of guilt is not so obviously weak as
to undermine confidence in the jury's determination, and the proof of guilt is not greatly
outweighed by contrary proof. We overrule issue three.
      We now turn to the two issues raised by Matthews in his supplemental brief. In those two
issues, Matthews urges that the trial court lacked jurisdiction because one of the convictions
alleged in order to make this driving while intoxicated charge a felony, cause No. 94,302, was not
a conviction for driving while intoxicated. He insists that the evidence was factually insufficient
to prove beyond a reasonable doubt that he was convicted of driving while intoxicated in that
cause. The basis for his argument is that, although other records admitted show the conviction
to be for driving while intoxicated, a copy of the judgment shows that the conviction was for
driving while license suspended.
      Matthews is correct in asserting that in order for the district court to have jurisdiction of this
cause, it was necessary that the State prove that Matthews had been convicted two times of an
offense relating to the operation of a motor vehicle while intoxicated. In addition to the alleged
conviction in cause number 94,302, the indictment alleged two other convictions for driving while
intoxicated, in cause numbers 94,327 and 92,955.
      The State presented evidence that Matthews had been convicted two times previously, in those
two cause numbers, for driving while intoxicated, and Matthews does not assert that the evidence
is insufficient to establish that he was convicted for driving while intoxicated in those two cause
numbers. We hold that where, as here, the State has proved that the defendant was convicted two
times previously for driving while intoxicated, the court has jurisdiction even if the evidence does
not establish that any additional alleged convictions were for the offense of driving while
intoxicated. We further hold that even if the evidence is factually insufficient to show that
Matthews was convicted of driving while intoxicated in cause No. 94,302, it is not factually
insufficient to prove the two prior convictions in cause numbers 94,327 and 92,955. As
previously noted, the State was only required to prove two prior convictions. We see no relevance
in its failure to prove a third. We overrule issues four and five.
The judgment is affirmed.

                                                                   JOHN G. HILL
                                                                   Senior Justice

Before Chief Justice Davis,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed January 15, 2003
Do not publish
[CRPM]



ed the official notice in the April
5 issue they relied upon a time-table prepared by the Secretary of State's office which provided
for thirty days notice before the election. The only matters in the election order not covered in
the March 29 issue (described below) were the exact wording of the proposition and the specific
location of the voting boxes, information which appeared in the official notice in the April 5 issue. 
          We hold that the April 5 notice substantially complied with the statute's notice provision. 
See Act of August 3, 1987, 79th Leg., 2d C.S., ch. 42, § 3.04, 1987 Tex. Gen. Laws 130, 131; 
Pollard, 203 S.W.2d at 644 (holding that five days notice of a special election, instead of the
required six days notice, substantially complied with the statute "in view of the fact that no voter
was deprived of his privilege of suffrage by virtue of the short delay in posting the notices..."). 
Chumney presented no proof that the failure of strict compliance with the notice provision
materially interfered with the election and the right of the electors freely to participate therein. 
The evidence revealed that this was a highly publicized election: a front-page story covering the
election appeared in seven out of the eight weekly issues of the Herald-News preceding the
election; more than half of the front page, including the lead story, in the March 29 issue
concerned the election, giving the date of the election, the boundaries of the district, the amount
of taxes that could be levied by the district and explanations of differences between the current
proposal and the election held two years before; a town hall meeting was held two weeks before
the election; an "open forum" was held at the Farm Bureau's offices two weeks before the
election; and letters to the editor were published in the Herald-News. Because we hold that the
April 5 notice substantially complied with the statute and because Chumney presented no evidence
that the failure of strict compliance with the notice provision materially interfered with the election
and the right of the electors freely to participate therein, points four and seven are overruled. See
Pool, 715 S.W.2d at 635; Pollard, 203 S.W.2d at 644.
          Chumney's points five and eleven address the qualifications of the voters. In point five,
he maintains that the court erred in finding that the evidence did not sufficiently establish that
votes of unqualified persons were cast and counted in the election. In point eleven, he attacks the
court's conclusion that, because all qualified voters residing within the proposed hospital district
were eligible to vote, election officials did not have to test or examine the qualifications of the
voters. As Craig and Hatch point out in their brief, even if Chumney were correct in his argument
that only property owners were entitled to vote and that the election officials should have tested
the voters' qualifications, the record does not contain any evidence that any such voter--a person
not owning taxable property--cast a ballot in the election. Further, the record does not reflect that
votes by unqualified persons affected the outcome of the election. The contestant in an election
contest has the burden of proving illegality or fraud. Medrano v. Gleinser, 769 S.W.2d 687, 688
(Tex. App.--Corpus Christi 1989, no writ); Goodman v. Wise, 620 S.W.2d 857, 859 (Tex. Civ.
App.--Corpus Christi 1981, writ ref'd n.r.e.). He must prove not only that voting irregularities
occurred but also that they did in fact materially affect the results of the election. Goodman, 620
S.W.2d at 859.
          Citing no authority, Chumney alleges in point ten that, because the wording in section
221.003 of the 1985 Election Code differs from the "predecessor statutes," a contestant's burden
of proof has changed. Specifically, he claims that a contestant need not show that defects in the
election process "directly affected particular votes in order to support a conclusion that the true
result cannot be determined." Section 221.003 provides:
(a) The tribunal hearing an election contest shall attempt to ascertain whether the
outcome of the contested election, as shown by the final canvass, is not the true
outcome because:
(1) illegal votes were counted; or
(2) an election officer or other person officially involved in the administration of the election:
(A) prevented eligible voters from voting;
          (B) failed to count legal votes; or
          (C) engaged in other fraud or illegal conduct or made a mistake. 
(b) In this title, "illegal vote" means a vote that is not legally countable.
(c) This section does not limit a provision of this code or another statute expanding
the scope of inquiry in an election contest. 
Tex. Elec. Code Ann. § 221.003 (Vernon 1986) (emphasis added). 
           Whether or not Chumney should have shown how these alleged irregularities "directly
affected particular votes," he had the burden of showing that the outcome of the election was not
the "true outcome" because of such irregularities. See id. We believe that the prior cases
establishing how an election contestant meets his burden of proof remain viable in light of
Medrano. See Medrano, 769 S.W.2d at 688. In Medrano, the court cited cases decided prior to
the enactment of the 1985 Election Code as authority for its holding that "the burden of proving
illegality in an election contest is on the contestant, who must prove that illegal votes were cast
in the election being contested and that a different and correct result would have been reached by
not counting the illegal votes." Id. Because Chumney failed to show that illegal votes were cast,
i.e., votes cast by persons who did not own property, and that if any were cast, a different and
correct result would have been reached by not counting the illegal votes, we overrule points five,
ten and eleven. See id. 
          Chumney complains in his sixth point that the court's finding that the "ballot proposition
was worded with sufficient definiteness and certainty as to fairly portray the chief features thereof
in words of plain meaning, so that it could be understood by the persons entitled to vote," is
against the great and overwhelming weight of the evidence. Chumney admits that the ballot
submitted the proposition in the statute's exact language. He believes, however, that the "same
was nevertheless fraught, by reason of lack of certainty, with the danger of misleading the voters." 
 The wording of the ballot proposition was sufficient as a matter of law, however, because it was
prescribed by the enabling statute. See Act of August 3, 1987, 70th Leg., 2d C.S., ch. 42, § 3.06,
1987 Tex. Gen. Laws 130, 131; Wright v. Board of Trustees of Tatum Indep. School Dist., 520
S.W.2d 787, 792 (Tex. Civ. App.--Tyler 1975, writ dism'd). We overrule Chumney's point six.
          For the reasons stated, we affirm the judgment. 
 
                                                                                 BILL VANCE
                                                                                 Justice
 
Before Chief Justice Thomas, Justice
          Cummings and Justice Vance 
Affirmed (Justice Cummings dissenting) 
Opinion delivered and filed February 21, 1991
Publish