

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ANGELA MEDLIN, YSIDRO RENTERIA, and MOZELLE CARR | § | No. 08-24-00001-CV |
| | § | Appeal from |
| Appellants/Cross-Appellees, | § | |
| | § | 143rd District Court |
| v. | § | of Loving County, Texas |
| AMBER MARIE KING, JAMES ALAN SPARKS, and HOLLY DIANE JONES, | § | (TC# 22-12-1075) |
| Appellees/Cross-Appellants. | § | |

**DISSENTING OPINION**

This case presents a cascade of issues raised by opposing parties to the election-contest and, as well, by certain non-party voters whose votes were stricken by the trial court's judgment. The meaning of residency for voting purposes plays a central role in the case. In my view, the trial court erroneously struck the votes of long-time voters of Loving County after finding—over the election winners' constitutional challenges—that recently amended provisions of the Texas Election Code were constitutional. Most relevant here, Senate Bill 1111 added a residency provision stating, "[a] person may not designate a previous residence as a home and fixed place of habitation unless the person inhabits the place at the time of designation and intends to remain." (the Temporary-Relocation Provision). Tex. Elec. Code Ann. § 1.015(f). On review, the majority claims it need not reach the constitutional questions presented, not because of the nature of the

case, nor because the trial court had not based its ruling on the challenged provision, but because it found it unnecessary to the final disposition of the appeal. Yet, in answering most of the issues presented, the Temporary Relocation Provision at issue reverberates throughout the majority's analysis. *Id*. Because I disagree with the majority's approach and analysis, I respectfully dissent from the opinion and judgment.

For brevity, I focus mostly on our general areas of disagreement. First, regarding Appellant-Contestees' constitutional challenges, these parties brought facial and as-applied challenges against two provisions of § 1.015, subparts (b) and (f). The challenges were timely brought in the trial court and error was undoubtedly preserved. Tex. R. App. P. 33.1. The trial court explicitly referenced § 1.015(b) and (f) in its voter-specific findings and its conclusions of law. In deciding it was unnecessary to the outcome of the appeal, however, the majority claims that "[n]one of the trial court's conclusions on any of the individual voters' residency hinge on either provision." In my view, however, it appears to be the opposite, particularly with regard to § 1.015(f). *See* Tex. Elec. Code Ann. § 1.015(f). As described by United States District Judge Lee Yeakel, the Temporary-Relocation Provision elaborates on the definition of "residence" contained in § 1.015(a). *Texas State Lulac v. Elfant*, 629 F.Supp.3d 527, 535 (W.D. Tex. 2022), *rev'd on other grounds*, 52 F.4th 248 (5th Cir. 2022); *see also* Tex. Elec. Code Ann. § 1.015(a) (providing that "[i]n this code 'residence' means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.").

In the majority's analysis, it appears to me that it relies heavily on subpart (f)'s definition of residence, though it claims otherwise. Specifically, the Temporary Relocation Provision is inextricably intertwined in the review of the admissibility of the expert witness's testimony, the ruling on the motion for a protective order to protect against the subpoena of multiple voters'

personal records, and in the review of whether the sufficiency of the evidence supports the trial courts' ultimate ruling on whether illegal votes were cast in the election. Because the full meaning of residency, as defined by the entirety of § 1.015, is pivotal to the majority's analysis, I disagree that the constitutional challenges are not necessary to the disposition here. And on the merits of those challenges, I would turn to *Elfant*, and wholly adopt Judge Yeakel's reasoning.

As *Elfant* explains, rights identified as "fundamental" under the Equal Protection Clause are entitled to strict scrutiny. *Id*. at 541 (citing *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966)) (providing that the United States Supreme Court has "long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined" and "the right to vote is too precious, too fundamental to be so burdened or conditioned"). That is, as *Elfant* recognized, only a compelling state interest can justify abridgment of a fundamental right, such as the right to vote. *Id.*

Examining § 1.015's multiple provisions, *Elfant* notes the statute initially provides that "a person does not *lose* a residence by leaving for 'temporary purposes only,' nor do they *acquire* a residence by coming for 'temporary purposes only.'" *Id*. at 547 (emphasis added) (citing Tex. Elec. Code Ann. § 1.015(c)–(d)). As to these provisions, *Elfant* points out, "[a]ll is fair, as otherwise, how would United States Senators for Texas vote in their home state?" *Id.*; *see also Marsden v. Troy*, 189 S.W. 960, 965 (Tex. App.—San Antonio 1916, no writ) ("Mere absence from a place of residence alone will not destroy a residence once fixed."). But contrasted with these provisions, *Elfant* notes that the newly enacted Temporary-Relocation Provision now adds that "a person may not designate a residence 'unless the person *inhabits* the place at the time of designation and intends to remain.'" *Elfant*, 629 F.Supp.3d at 547 (citing Tex. Elec. Code Ann. § 1.015(f)). In

3

doing so, *Elfant* concludes that this newer provision creates a "man without a country." *Id*. For example, "[a] college student cannot acquire a residence in the college town where they will study 'temporar[il]y,' nor can the student designate as a residence the home town they have stopped 'inhabiting,' albeit temporarily." *Id.*. (citing Tex. Elec. Code Ann. § 1.015(d), (f)). Thus, with adoption of subpart (f), certain voters "are undeniably disenfranchised because they are unable to register to vote both where they have moved and where they have moved from." *Id*. Similar arguments could be made for parents of children who have educational needs or for persons who temporarily seek medical treatments away from their established residence. For sure, Texas has an interest in ensuring that Texans only have *one* residence for voting purposes. Yet, *Elfant* concludes that subpart (f) "renders some Texans without *any* residence." *Id*. In my view, this is the same trap that befell the long-time residents and voters of Loving County whose votes were stricken by application of this provision. For these reasons, I would agree with *Elfant* that § 1.015(f) "does not overcome any degree of constitutional scrutiny." *Id*. at 548.

Second, I disagree with the majority's analysis of the Contestees' challenge to Contestants' expert testimony. Stephen Ragland, a CPA and retired regulatory vice president of a utility company, testified regarding the energy usage at several of the challenged voters' addresses, purportedly opining on the typical electricity levels for an inhabited home. Contestees' objections included that Ragland lacked qualifications, that his opinions were not based on specialized knowledge nor relevant to contested issues, that his opinions lacked sufficient basis and reliability, and the prejudicial effect was outweighed by any probative value. The majority concludes the trial court did not abuse its discretion in overruling Contestees' objections to Ragland's testimony. Because I would conclude the trial court erroneously overruled these objections, I disagree with the majority's analysis.

Citing to *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964), the majority rightly recognizes that "residency under the Election Code has long depended on several factors, including a person's volition, intent, and action." But following that statement, when it cites to *Mills* again, it does so for the proposition that "[a] court must necessarily consider a person's bodily presence in assessing residence." From there the majority concludes that "Ragland's testimony is directly linked to one of the components a trial court must consider in determining residency in an election contest." I would conclude instead that Contestees' objections should all have been sustained. As a former utility executive who testified to never having visited Loving County, his expertise was not well situated for the relevant issues of the case, and his opinions were overly prejudicial because utility usage is not alone probative of a voter's residency. Although physical presence is initially considered when a voter establishes a residence, *Mills* also explained that factor must be considered in combination with a voter's intentions. *Id*. *Mills* more expansively described that:

> Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue.

*Id*. In its opinion, the majority faults Contestees for not explaining how Ragland's testimony "'unfairly skewed the evaluation of bodily presence' over the voters' own testimony." But when evidence lacks probative value or has no relationship to any issues in the case, it is irrelevant and does not satisfy either Texas Rule of Evidence 702, for admitting expert witness testimony, or Rules 401 and 402, pertaining to relevance. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). Here, at most, Ragland generalized about statistical norms for customary electricity usage under an unspecified "traditional lifestyle of living" in a generic community. In *Rodriguez v. Thompson*, 542 S.W.2d 480, 484 (Tex. App.—El Paso 1976, no writ), which similarly involves an election contest, evidence was introduced that utilities in a home were

5

turned off the day before the election. Because there was no testimony as to exactly when the couple moved, and the wife was obviously present to vote on election day (while her husband voted absentee), this Court determined that a challenge lodged against the couple's residency could not be sustained. *Id.*

Third, as for the protective order sought by the non-party voters, I also disagree with the majority. Contestants issued subpoenas requiring the appearance at trial and production of documents and tangible items from multiple voters. They sought the following items and documents: (1) driver's licenses; (2) personal identification cards issued by any state agency; (3) concealed handgun licenses; (4) notices of appraised values related to any voter-owned property; (5) voter-owned vehicle and boat registration documents; (6) deeds, mortgages, and mortgage statements for any voter-owned Loving County property; (7) homeowner's and renter's insurance policies for any voter-owned or rented property; (8) utility bills for any property the voter lived in or claimed as residence from May through November 2022; and (9) any document demonstrating residence for voting. Unlike the majority, I would conclude that Contestants failed to show their requests were supported by a substantive right under the law. Although the Election Code permits a voter registrar to request documents from a voter, as limited by the terms of the statute, the power to do so is exclusive. *See* Tex. Elec. Code Ann. §§ 15.051–.052. In their briefing, Contestants claim "the civil procedure rules provide a toolbox for litigants, and litigants are entitled to use them." Factually, however, the subpoenaed voters were not litigants of the trial court proceeding and their right to vote should not be burdened with overly broad, irrelevant, and harassing discovery.

Finally, as for the voter-specific analysis of the stricken voter's residency, I would conclude Contestants failed to meet their burden to show they voted illegally by clear and convincing

6

evidence. As for the struck voters who are grouped as members of the Renteria family, the Jones-Carr family, and singularly, William Wilkinson, the voters all testified that each had previously established a home in Loving County, and they expressed their intention to return after temporary absences. *See* Tex. Elec. Code Ann. § 1.15 (a), (c), and (d). Introducing evidence that a voter owned a home in another county and lived outside their Loving County home for an extended period of time for temporary purposes, does not *alone* prove by clear and convincing evidence that the voter was not qualified to vote in their home county, particularly when their intention was lacking as to the outside county residence. *Id.*; *see also Mills*, 377 S.W.2d at 637 (providing that bodily presence alone nor intention alone suffice to create the residence). As *Elfant* explained, if residence were determined by where a person spends most of their time, or where their career is centered, then persons elected to federal office, for example, might be disenfranchised of their right to vote. *Elfant*, 629 F.Supp.3d at 547; *see also Thompson*, 542 S.W.2d at 483 (finding that where a person usually sleeps at night is not absolute and controlling for voting purposes, where there is no indication of an intent to abandon a residence long held and where they typically have voted); *Clark v. Stubbs*, 131 S.W.2d 663, 666 (Tex. App.—Austin 1939, no writ) (providing that law prohibits forfeiture of residence, once obtained, due to absences for personal business or for the state or federal governments).

As the Texas Supreme Court recently noted, "[t]he right to vote makes self-government possible and undergirds the premise that the government has the consent of the governed." *In re Khanoyan*, 637 S.W.3d 762, 763 (Tex. 2022). To this extent, it is the most fundamental individual liberty of the people. *Id.* (citing *In re Winship*, 397 U.S. 358, 385 (1970) (Black, J., dissenting)). Recognizing this important constitutional right is plainly at issue, I would consider the

constitutional challenges raised and preserved for review. Thus, I disagree with the majority's analysis and its disposition. For all these reasons, I respectfully dissent.

GINA M. PALAFOX, Justice

August 16, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J., dissenting